Defendant Auburn Ford, Lincoln Mercury, Inc. ("Auburn Ford"), appeals from a judgment based on a $47,000 jury verdict against it in favor of plaintiff Lisa A. Norred based on her 20-count complaint against Auburn Ford arising out of its sale to her of a 1984 Datsun Sentra automobile. She also sued Ford Motor Company and Ford Motor Credit Corporation,[1] but the trial court dismissed Ford Motor Company prior to trial and dismissed Ford Motor Credit Corporation at the close of the plaintiff's case. Lisa's main allegations were fraud, breach of warranty, breach of contract, and violation of several federal regulations.
Gerald Norred is the used car manager for Auburn Ford and is Lisa's second cousin. On June 30, 1986, Lisa purchased the 1984 Datsun Sentra from Auburn Ford, through Gerald, for $4,995. Under her retail installment contract, she was to make 36 monthly payments of $156.57. Although Lisa testified that when she test-drove the car it was "idling high" and "skipping and acting up real bad," she said that Gerald told her not to worry about it, that the motor had just been washed. Lisa said she bought the car in spite of these problems, because, she said, Gerald told her "he would take care of it" in the event it needed repairs.
The car continued skipping after she took it home, and Gerald told her to bring it back to Auburn Ford. The problems recurred, however, and Lisa took it to Auburn Ford a total of eight times. She was not charged for these repairs and was given a car to use temporarily on three occasions while hers stayed in the shop. When her car finally quit running, Gerald told her she could either take it to Auburn Ford or La Grange Ford, but that if the repairs were not covered by the extended warranty she would be responsible for paying; he felt that Auburn Ford had already done enough. Neither Lisa nor Auburn Ford paid for the repairs done at La Grange Ford, which came to over $600.
On February 10, 1987, while the car was at La Grange Ford, Lisa wrote Auburn Ford a letter in which she requested a refund of all her money and threatened legal action. In her complaint, filed June 12, 1987, she demanded $5,497.63 in compensatory damages, $1,800 in consequential and incidental damages, and $152,000 in punitive damages. The jury awarded her $7,000 in compensatory damages and $40,- *Page 1079 
000 in punitive damages. Auburn Ford raises five issues on appeal.
At the close of Lisa's case, Auburn Ford moved for a directed verdict, at which time the following occurred:
 "THE COURT: I think there is a scintilla of evidence. I will deny your motion.
 "MR. LIKINS [Auburn Ford's lawyer]: The scintilla rule went out.
"THE COURT: Huh-uh, not on cases filed before.
 "MR. KITCHENS [Lisa's lawyer]: The case arose —
"MR. LIKINS: Ninety-one days or something.
"MR. KITCHENS: The cause of action arose before.
 "THE COURT: Okay. Under the new rules, it will be a little different situation or it might not."
Auburn Ford argues that the trial court incorrectly applied the scintilla rule in denying its motion for directed verdict. This case was filed on June 12, 1987, and is, thus, controlled by Ala. Code 1975, § 12-21-12 (effective June 11, 1987), which abolished the "scintilla rule" and established the "substantial evidence" standard for testing the sufficiency of the evidence on an issue of fact. While the substantial evidence test does apply in this case, Auburn Ford's argument still fails, because the record contains substantial evidence supporting Lisa's claims. Assuming that the trial court applied the scintilla standard in ruling on the motion, it nonetheless reached the correct result. "A court cannot be put in error if its ruling is proper, even though it assigns the wrong reasons." Bennettv. Bennett, 454 So.2d 535, 538 (Ala. 1984). See, also, Davisonv. Lowery, 526 So.2d 2 (Ala. 1988), cert. denied, ___ U.S. ___,109 S.Ct. 140, 102 L.Ed.2d 113 (1988); Tierce v. MacedoniaUnited Methodist Church, 519 So.2d 451 (Ala. 1987).
Examining that evidence in a light most favorable to Lisa, the non-movant, Huntsville Madison Cty. R.R. Authority v.Alabama Indus. R.R., 505 So.2d 341 (Ala. 1987), we conclude that the facts establish not only fraud, contrary to Auburn Ford's assertions, but also breach of contract and breach of warranty. Auburn Ford claims that there was insufficient evidence of fraud, particularly with regard to a $20 "documentary fee" Lisa paid.
Testimony by Jack Kitchens, an expert witness in the area of buying and selling automobiles, showed that Auburn Ford overcharged Lisa $1 on the title fee. She was charged $4.50 (the charge for a car that came from another state), although the title fee for a used car previously titled in Alabama is $3.50. Kitchens also stated that a "documentary fee" used to be an official fee charged for recording ownership documents relating to automobiles, but that it is not assessed in regard to cars with "titles," which in Alabama would be 1975 and later models. In fact, Robert Barnett, finance manager for Auburn Ford, when asked to explain the "documentary fee," admitted, "Well, basically it's Christmas bonus for the employees, if you want to know the truth about it."
Finally, Gerald conceded that there was no "Buyers Guide" window sticker on the car at any time prior to Lisa's buying it. Ala. Code 1975, § 6-5-102, reads:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." (Emphasis added.)
16 C.F.R. § 455.2 and 455.3 (1988) provide:
"§ 455.2 Consumer sales — window form.
 "(a) General duty. Before you offer a used vehicle for sale to a consumer, you must prepare, fill in as applicable and display on that vehicle a 'Buyers Guide' as required by this Rule.
 "(1) Use a side window to display the form so both sides of the form can be read, with the title 'Buyers Guide' facing to the outside. You may remove a form temporarily from the window during any test drive, but you must return it as soon as the test drive is over.
". . . . *Page 1080 
"§ 455.3 Window form.
 "(a) Form given to buyer. Give the buyer of a used vehicle sold by you the window form displayed under § 455.2 containing all of the disclosures required by the Rule and reflecting the warranty coverage agreed upon. If you prefer, you may give the buyer a copy of the original, so long as that copy accurately reflects all of the disclosures required by the Rule and the warranty coverage agreed upon."
To withstand a directed verdict on a fraud claim, be it fraud of the willful, reckless, or innocent variety, the plaintiff must show a false representation by the defendant concerning a material existing fact that the plaintiff relied on to his damage. Boswell v. Coker, 519 So.2d 493 (Ala. 1987). We recently examined what constitutes the necessary reasonable reliance in Southern States Ford, Inc. v. Proctor,541 So.2d 1081 (Ala. 1989), in which a disguised dealer profit comparable to the "documentary fee" in this case was misrepresented to the plaintiff as a fee similar to charges for taxes, tags, and title. Margaret Proctor paid an "AMV" or "adjusted market value" as part of the purchase price, and she testified that she would not have paid it had she been told truthfully of the nature of the charge. Notwithstanding the fact that the sales price as stated on the final contract, which contained the "AMV," was higher than the price Proctor thought she would be paying, we held that her reliance on the dealer's misleading statements concerning a lower price was reasonable, and we affirmed a judgment based on the verdict in her favor. As in this case, there was also no addendum sticker on the window of Proctor's car when she bought it.
Auburn Ford next argues that Lisa's breach of warranty claim is invalid because of the disclaimer of warranties that she signed. That disclaimer states that the car was sold to her "as is" and it specifically waives, though not conspicuously, any implied warranties of merchantability or fitness for a particular purpose.
Under Ala. Code 1975, § 7-2-316(3)(a), such an "as is" disclaimer does not have to be conspicuous or even mention the word "merchantability." Gaylord v. Lawler Mobile Homes, Inc.,477 So.2d 382 (Ala. 1985). This disclaimer would ordinarily be sufficient to preclude Lisa's breach of warranty claim. However, she also purchased an "Extended Service Contract" for $395 with Auburn Ford the same day she purchased the car. That contract was to run from June 30, 1986, to March 30, 1987.
We find the following at 15 U.S.C. § 2308 (1982):
"§ 2308. Implied warranties
"Restrictions on disclaimers or modifications
 "(a) No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." (Emphasis added.)
Thus, in light of Lisa's service contract, Auburn Ford's disclaimer is ineffective to now exclude any implied warranties.
Auburn Ford's argument that Lisa failed to prove actual damages is also without merit. However, it appears to us from the record that the most Lisa is entitled to in actual damages is $3,981.17 (rather than the $7,000 the jury awarded her).[2] Therefore, that portion of the judgment awarding compensatory and consequential damages is remitted by $3,018.83. *Page 1081 
Finally, Auburn Ford argues that the punitive damages were excessive and that the trial court failed to make findings on that issue in accordance with Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986). Auburn Ford did not raise the issue of punitive damages in its motion for new trial; rather, the motion states that the evidence was insufficient to support the $7,000 compensatory damages. Because the issue of punitive damages was not presented to the trial court, that court's failure to comply with Hammond is not reviewable by this Court.Peete v. Blackwell, 504 So.2d 222 (Ala. 1986). We do, however, note that, as in Southern States Ford, Inc. v. Proctor, supra, there is sufficient evidence in this case of an intent to deceive or defraud, which will support an award of punitive damages. American Honda Motor Co. v. Boyd, 475 So.2d 835, 839
(Ala. 1985). Accordingly, the judgment is affirmed in all respects upon the condition that Lisa accept a remittitur in the amount of $3,018.83.
AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.
[1] After repossessing and selling the car, Ford Motor Credit Corporation filed a counterclaim against Lisa in the amount of $2,461.72 (representing the deficiency), which was later dismissed with prejudice.
[2] Specifically, those damages are:
 Trade in value of Lisa's car $1,495.00 Repairs at La Grange Ford 607.00 Seven car payments @ $156.57 1,095.99 Insurance 400.00 Radio 173.00 Antenna $ 14.00 Distributor cap 8.00 Lost wages for two days' work 70.00 Two tires 78.18 Towing charge 40.00