HORNSBY, Chief Justice
(concurring in part and dissenting in part).
I concur in the majority’s holding that the trial court abused its discretion in not allowing plaintiff Bowker to amend her complaint to allege a breach of contract claim. Nevertheless, I must respectfully dissent from the majority’s conclusion that the trial court correctly directed a verdict for defendant Willis on the fraud count.
After the close of the plaintiff’s case, Willis made a motion for a directed verdict. The trial court granted this motion on the ground that Bowker had failed to prove that she suffered any damages as a result of any wrongdoing on Willis’s part. The trial court, however, did not address whether Bowker had proved the other elements of her fraud claim.
As stated by this Court in Auburn Ford, Lincoln Mercury, Inc. v. Norred, 541 So.2d 1077, 1080 (Ala.1989):
“To withstand a directed verdict on a fraud claim, be it fraud of the willful, reckless, or innocent variety, the plaintiff must show a false representation by the defendant concerning a material existing fact that the plaintiff relied on to his damage.”
(Emphasis added.) See also King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala.1987); Boswell v. Coker, 519 So.2d 493 (Ala.1987); Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala.1979), appeal after remand, 395 So.2d 475 (Ala.1981). The record in this case reveals that Bowker did show that she suffered damages. In reliance on Willis’s promise to convey his Pasquale franchise to her, Bowker paid him a total of $22,000. Bowker testified that, of this sum, $10,000 represented the cost of the franchise, $9,000 represented the cost of one-half of the equipment,[1] and $3,000 represented the transfer fee.[2] Conflicting evidence was presented as to who was actually responsible for paying this transfer fee; Bowker alleged that this was Willis’s responsibility and Willis alleged that this was Bowker’s responsibility.
In its opinion, the majority states: “Even if Willis had misrepresented material facts to Bowker, we agree with the trial court that Bowker did not prove that she was damaged as a proximate result.” The majority then recites Bowker’s testimony concerning why she closed down the business. However, the majority misunderstands the damages involved in this case. The damages for the alleged fraud relate to Bowker’s payment of $22,000 to Willis and to the *1337 failure of Willis to convey the franchise to her.
Examining the evidence presented in a light most favorable to the nonmoving party, Bowker, I believe she presented substantial evidence supporting her claim of fraud. See Auburn Ford, Lincoln Mercury, Inc. v. Norred, supra. Bowker paid Willis $22,000 on February 5, 1988. Willis, however, did not act to convey his franchise to Bowker as prescribed in his franchise agreement with Pasquale.[3] That is, Willis was obligated to give a 30-day written notice to Pasquale concerning any possible transfer of the franchise. He did not do so. The purpose of this notification was to allow Pasquale the right of first refusal in purchasing the franchise. In addition, the franchise agreement provided that Willis could not sell or assign his franchise without getting the written consent of Pasquale. Willis, however, failed to get this written consent. Even though Bowker paid Willis $22,000 on February 5,1988, for his part of the franchise and his part of the business, Willis was not granted the right to transfer the franchise from Attalla to Blountsville until March 1, 1988. In addition, Willis never transferred any ownership documentation to Bowker. In fact, the franchise was still in Willis’s name. Because Willis still owned the franchise, Bowker would have been unable to sell or transfer her interest to a prospective buyer. Consequently, I would reverse the judgment insofar as it was based on the trial court’s directed verdict for Willis and would remand the case for further proceedings.
SHORES and INGRAM, JJ., concur.

. The record also reveals that Bowker later purchased the remaining half of the equipment from Willis’s partner, Mike Bunt.

. Willis testified that the transfer fee was $3,750.

. In his testimony, Willis indicated that he spoke with a Pasquale field representative concerning Bowker’s interest in buying the franchise. However, Willis never attempted to comply with the requirements in the franchise agreement concerning the transfer of the franchise.