KHALID ISMAEL, PLAINTIFF v. GOODMAN TOYOTA, DEFENDANT

No. 9110DC643

(Filed 16 June 1992)

1. **Uniform Commercial Code § 10 (NCI3d); Sales § 5 (NCI3d) — used car sale — Magnuson-Moss Warranty Act**

The Magnuson-Moss Warranty Act applied to the sale of a used 1985 car by defendant dealer to plaintiff consumer.

**Am Jur 2d, Automobiles and Highway Traffic §§ 731, 733.**

**What are "merchantable" goods within meaning of UCC § 2-314 dealing with implied warranty of merchantability. 83 ALR3d 694.**

2. **Uniform Commercial Code § 13 (NCI3d) — used car sale — implied warranty of merchantability**

An implied warranty of merchantability arises upon the sale of a used car by a dealer.

ISMAEL v. GOODMAN TOYOTA

[106 N.C. App. 421 (1992)]

**Am Jur 2d, Automobiles and Highway Traffic §§ 731, 733.**

**What are "merchantable" goods within meaning of UCC § 2-314 dealing with implied warranty of merchantability. 83 ALR3d 245.**

3. **Uniform Commercial Code § 13 (NCI3d)— "as is" sale of used car—service contract—Magnuson-Moss Warranty Act—warranty of merchantability**

Although an implied warranty of merchantability is generally excluded by an "as is" sale, N.C.G.S. § 25-2-316(3)(a), the Magnuson-Moss Warranty Act prohibited defendant dealer from disclaiming such warranty by an "as is" sale of a used car to plaintiff where plaintiff and defendant, at the time of the sale, entered into a written service contract for repair of the car. The written agreement was a service contract within the meaning of the Magnuson-Moss Warranty Act where defendant agreed to perform certain repairs for a specified duration of 24,000 miles or a fixed period of 24 months, and plaintiff paid defendant an additional $695.00 for the contract.

**Am Jur 2d, Automobiles and Highway Traffic §§ 732, 733.**

**Liability on implied warranties in sale of used motor vehicle. 22 ALR3d 1387.**

4. **Uniform Commercial Code § 13 (NCI3d)— warranty of merchantability—sufficient evidence of breach**

Plaintiff was entitled to recover for breach of the implied warranty of merchantability of a used car sold to him by defendant dealer where plaintiff's evidence showed that the car was unfit for its ordinary purpose at the time of sale in that plaintiff returned the car to defendant for repairs on at least six occasions during the first six months of his ownership, there was no evidence that plaintiff sought to have the repairs made pursuant to his service contract with defendant, and plaintiff had driven the car only 700 miles when he was informed that the car was unrepairable; plaintiff's evidence showed that he was injured by the purchase of the used car in that the purchase price was $5,054, plaintiff traded in a car valued at $1,600 toward the purchase price and service agreement and financed the remaining balance for a total cost of $7,414.60, plaintiff continued making payments on the car loan up to the time of trial, plaintiff had the car for less than two weeks

ISMAEL v. GOODMAN TOYOTA

[106 N.C. App. 421 (1992)]

of his first four months of ownership because defendant repeatedly had possession of the car for repairs, and plaintiff has been unable to drive the car since he was told it was unrepairable; plaintiff's evidence showed that the car's mechanical defects were the proximate cause of his resulting injury; and the evidence established that plaintiff gave timely notice of the defects to defendant by returning the car to defendant the day following his purchase and thereafter repeatedly returning the car to defendant for repair. N.C.G.S. § 25-2-314.

**Am Jur 2d, Automobiles and Highway Traffic §§ 732, 733.**

**Liability on implied warranties in sale of used motor vehicle. 22 ALR3d 1387.**

5. **Uniform Commercial Code § 10 (NCI3d)— used car sale— service agreement—administrator not liable for warranty**

The trial court erred in concluding that warranty obligations for a used car sold to plaintiff by defendant dealer were the responsibility of the administrator of a service agreement where the agreement specifically stated in two distinct places that the administrator is not a party to the agreement or to the sale of the car, and the service agreement also stated that it was between plaintiff and defendant dealer.

**Am Jur 2d, Automobiles and Highway Traffic §§ 732, 733.**

**Liability on implied warranties in sale of used motor vehicle. 22 ALR3d 1387.**

APPEAL by plaintiff from judgment entered 21 March 1991 in WAKE County District Court by *Judge James R. Fullwood.* Heard in the Court of Appeals 15 April 1992.

Plaintiff instituted this action to recover damages he allegedly suffered as a result of his purchase of a used car from defendant. Plaintiff claimed that the defendant breached its implied warranty of merchantability because the car was unroadworthy, was not repairable at the time of purchase and was therefore unfit for its particular purpose. The case was heard by the trial court without a jury.

Plaintiff's evidence tended to show the following facts and circumstances. On 13 April 1989, plaintiff purchased a used 1985

Ford Tempo, with recorded mileage of 58,810, from defendant. The purchase price was $5,054.00. Additionally, plaintiff simultaneously purchased from defendant a Vehicle Service Agreement for $695.00, which was to cover the car for 24 months or 24,000 miles, whichever first occurred. Plaintiff testified that defendant assured him the service agreement would cover the car's engine, transmission, axles, brakes and air conditioning among other things. Plaintiff traded in a 1985 Ford Escort wagon valued at $1,600.00 in exchange for the Tempo and service agreement. Plaintiff financed the remaining purchase price of $4,626.44. The total cost of the Ford Tempo, including finance charges, was $7,414.60.

Plaintiff testified that he and his wife noticed the car "shook" during their test drive on the night of their purchase. Defendant's salesman assured them that the car "probably just needed a tune-up and that Goodman would repair anything that was found wrong with the car at no charge." Plaintiff admitted he purchased the car "as is" but contended he did so only because of the salesman's assurance of repair and because of the vehicle service agreement he purchased to cover the car.

On the day after plaintiff purchased the car, he returned it to defendant for repair because "the engine kept cutting off, the engine light stayed on, and the car pulled from side to side, shook badly and made loud noises." During the first four months of his ownership, plaintiff had to return the car to defendant for repairs on at least six occasions. Defendant did not charge for these repairs, and did not file claims under the service agreement. Each time defendant returned the car to plaintiff, plaintiff was assured it was fixed. However, plaintiff was never able to keep the car for more than three days before having to return it to defendant again for repair. Defendant kept the car one to three weeks every time plaintiff returned the car. Plaintiff had use of the car for less than two weeks of his first four months of ownership.

Plaintiff finally decided to stop taking the car back to defendant for repairs. Plaintiff testified that defendant told him that the car could not be repaired and that the problems he was experiencing with the car were normally experienced with used 4-cylinder cars. Plaintiff then spent in excess of $900.00 trying to have the car repaired by various Ford dealer service departments and auto mechanics to no avail. Plaintiff was told the car was not repairable due to sludge in the engine. The car has not been driven since

**ISMAEL v. GOODMAN TOYOTA**

[106 N.C. App. 421 (1992)]

December 1989. However, plaintiff continued to make payments of $193.82 on the car each month up to the time of trial in order to protect his credit record. From April 1989 to the time of trial, plaintiff was able to drive the car a total of only 700 miles.

Defendant offered evidence in the form of testimony by David Goodman. Defendant's evidence tended to show that all of the used cars on defendant's lot are in varying conditions. Further, defendant sells all of its used cars "as is" and the "purchase price is adjusted according to the car's worth and its mileage." Goodman further testified that the Tempo's mileage was very high when plaintiff purchased the car and that plaintiff had not maintained the car in a clean fashion.

In its judgment, the trial court made findings of fact, entered conclusions of law and denied any relief to plaintiff. The trial court concluded that plaintiff had purchased the vehicle in used "as is" condition and defendant "assumed and bore no responsibility for subsequent repair of the vehicle or its roadworthiness." The trial court further concluded defendant was not liable to plaintiff "for negligence or breach of warranty, as the duty and warranty obligations in this matter ran to the General Warranty company under the service contract and not to Defendant dealership." The trial court held that plaintiff was not entitled to have and recover damages from defendant. Plaintiff appealed from this judgment.

*Moore & Van Allen, by Denise Smith Cline and A. Bailey Nager, for plaintiff-appellant.*

*Abraham Penn Jones, Esquire for defendant-appellee.*

WELLS, Judge.

On appeal, plaintiff contends, *inter alia*, that the trial court erred in making the following conclusions of law:

CONCLUSIONS OF LAW

. . .

2. Due to the purchase of the subject vehicle in used 'as is' condition, the Defendant dealer assumed and bore no responsibility for subsequent repair of the vehicle or its road worthiness.

3. Defendant also bore no responsibility for repairing the vehicle, notwithstanding any alleged verbal promises and

agreements made subsequent to the purchase of the vehicle in 'as is' condition.

4. Defendant is not liable to Plaintiff for negligence or breach of warranty, as the duty and warranty obligations in this matter ran to the General Warranty company under the service contract and not to defendant dealership.

The underlying premise of plaintiff's contention is that defendant violated the Magnuson-Moss Warranty Act and is therefore liable for damages plaintiff suffered as a result of that violation.

We first point out that on appeal the trial court's conclusions of law are reviewable *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E.2d 189 (1980). After a thorough review of the record in this case, we agree with plaintiff's foregoing contention for the reasons set forth below.

I.

APPLICABILITY OF MAGNUSON-MOSS

In 1975, Congress passed the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, (hereinafter the "Act"), 15 U.S.C.A. §§ 2301 *et seq.*, (West 1982), which applies to consumer products manufactured after 4 July 1975. 15 U.S.C.A. § 2312(a). The Act was passed in an attempt to make warranties on consumer products more understandable and enforceable and further to establish a more effective procedural mechanism for consumer claims which typically involve a small amount of damages and for which a remedy may otherwise be unavailable. 17 Am. Jur. 2d *Consumer Product Warranty Acts* § 1 (1990). A consumer alleging a violation of the Act can bring suit in any state court of competent jurisdiction or, subject to certain jurisdictional requirements, in federal court. 15 U.S.C.A. § 2310(d)(1)(A), (B).

The Act provides a cause of action to a consumer who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under the Act, or under a written warranty, implied warranty, or service contract. 15 U.S.C.A. § 2310(d)(1). The Act does not invalidate or restrict any right or remedy available to a consumer under State law or any other Federal law, 15 U.S.C.A. § 2311(b)(1); nor does it "supercede any provision of State law regarding consequential damages for injury to the person or other injury," 15 U.S.C.A. § 2311(b)(2)(B). Further-

**ISMAEL v. GOODMAN TOYOTA**

[106 N.C. App. 421 (1992)]

more, the Act provides that a consumer who prevails in an action brought under § 2310(d)(1) may recover as part of his judgment "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action. . . ." 15 U.S.C.A. § 2310(d)(2). The award of attorneys' fees is within the discretion of the court. *Id.*

[1] For purposes of the Act, the term "consumer" is defined as ". . . a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C.A. § 2301(3). A "consumer product" is any tangible personal property used for family, personal or household purposes which is distributed in commerce. 15 U.S.C.A. § 2301(1). A "supplier" is defined as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C.A. § 2301(4). In order to determine whether the Act applies, we must relate the above definitions to the facts and circumstances of this case.

First, plaintiff purchased the Ford Tempo for his personal use and not for resale. Consequently, plaintiff is a consumer within the meaning of the Act and is therefore protected by its provisions.

Second, since the car is tangible personal property which is distributed in commerce and used for family, personal and household uses, it is a consumer product as defined by the Act. Further, the fact that the car was manufactured after 4 July 1975 was undisputed. Although the Act does not make reference to whether it applies to "used" consumer products, we find that the provisions of the Act, when read together, support the conclusion that the Act does apply to such products. Further, we find that the Act specifically applies to the sale of used cars. In 15 U.S.C.A. § 2309(b) Congress directed the Federal Trade Commission (hereinafter "FTC") to initiate a rulemaking proceeding dealing with warranties and warranty practices in connection with the sale of used motor vehicles, and to prescribe rules dealing with such warranties and practices

ISMAEL v. GOODMAN TOYOTA

[106 N.C. App. 421 (1992)]

"to the extent necessary to **supplement** the protections offered the consumer by this chapter. . . ." (Emphasis added.) By necessary implication, Chapter 50, which contains the Act, applies to used motor vehicles. We also note that the FTC did in fact promulgate the "Used Motor Vehicle Trade Regulation Rule" which is codified at 16 C.F.R. § 455 *et seq.*, and imposes specific requirements upon the sales activities and warranty practices of used motor vehicle dealers.

Finally, defendant is a supplier within the meaning of the Act because the dealership was engaged in the business of making cars directly available to consumers. Therefore, the Act is applicable to the case before us.

In order for this plaintiff to have established his entitlement to relief under the Act, he must have shown he was damaged by the defendant's failure to comply with an obligation under the Act, the service contract, and/or an implied warranty. 15 U.S.C.A. § 2310(d)(1). Defendant contends that since the uncontradicted evidence proved the car was sold "as is," all express and implied warranties were effectively disclaimed pursuant to our Uniform Commercial Code, specifically N.C. Gen. Stat. § 25-2-316(3)(a), and therefore plaintiff had no claim for breach of an implied warranty. Defendant also contends that since no express or implied warranties were given, the Act does not apply in this case. We disagree.

[2] "Implied warranty" as defined by the Act is "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C.A. § 2301(7). Under our Uniform Commercial Code, an implied warranty of merchantability arises in a contract for the sale of goods by a merchant unless excluded or modified. N.C. Gen. Stat. § 25-2-314(1) (1986); *Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972). Furthermore, our courts have specifically held that an implied warranty of merchantability arises upon the sale of a used car by a dealer. *Rose v. Epley Motor Sales*, 288 N.C. 53, 215 S.E.2d 573 (1975); *Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493 (1985).

[3] Defendant correctly contends that, as a general rule, the implied warranty of merchantability is excluded by an "as is" sale. N.C. Gen. Stat. § 25-2-316(3)(a). However, the Act significantly limits a supplier's ability to modify or disclaim implied warranties. 15 U.S.C.A. § 2308(a). If, at the time of sale or within 90 days thereafter,

a supplier enters into a service contract with the consumer which applies to such consumer product, the supplier may not disclaim or modify any implied warranty with respect to that product. *Id.* Furthermore, a disclaimer made in violation of § 2308(a) is ineffective for purposes of the Act *and* State law. 15 U.S.C.A. § 2308(c). (Emphasis added.) *See, e.g., Patton v. McHone,* 822 S.W.2d 608 (Tn. 1991); *Auburn Ford, Lincoln Mercury v. Norred,* 541 So.2d 1077 (Ala. 1989).

The Act defines the term "service contract" as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C.A. § 2301(8). Further, in its "Rules, Regulations, Statements and Interpretations Under the Magnuson-Moss Warranty Act," the FTC gave examples of what was meant by the term "service contract" as used in the Act. The FTC stated, *inter alia,* that "an agreement which calls for some consideration in addition to the purchase price of the consumer product, or which is entered into at some date after the purchase of the consumer product to which it applies, is a service contract." 16 C.F.R. § 700.11(c).

In this case, the evidence that plaintiff and defendant, at the time of sale, entered into a written service contract for repair of the Tempo was undisputed. The agreement was a service contract within the meaning of the Act because it was in writing and defendant agreed to perform certain repairs for a specified duration (24,000 miles) or fixed period of time (24 months). Further, the plaintiff paid defendant an additional $695.00 for the contract. Therefore, under § 2308(a)(2) of the Act, defendant was prohibited from disclaiming the implied warranty of merchantability which arose in the contract of sale under State law and the "as is" sale was ineffective as a disclaimer of this warranty.

We conclude that plaintiff could properly seek relief under § 2310(d)(1) of the Act because defendant violated the Act when he failed to comply with § 2308. Furthermore, plaintiff could pursue a claim for breach of the implied warranty of merchantability which arose upon this sale since the disclaimer was ineffective for purposes of the Act and State law. Accordingly, we hold that the trial court's conclusions of law numbered 2 and 3 were erroneous.

II.

IMPLIED WARRANTY OF MERCHANTABILITY

In order to recover for breach of the implied warranty of merchantability, plaintiff must establish:

(1) a merchant sold goods, (2) the goods were not 'merchantable' at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

*Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493 (1985), citing *Reid v. Eckerd's Drugs, Inc.*, 40 N.C. App. 476, 253 S.E.2d 344, *disc. review denied*, 297 N.C. 612, 257 S.E.2d 219 (1979).

[4] First, the uncontradicted evidence established that the Ford Tempo was sold to plaintiff by defendant who is a merchant for purposes of N.C. Gen. Stat. § 25-2-314. *Rose, supra.* (A used car dealer is a "merchant" as that term is defined in the Uniform Commercial Code, G.S. 25-2-104).

Second, in order for goods to be merchantable at the time of sale, they must, among other things, be fit for the ordinary purposes for which such goods are used. N.C. Gen. Stat. § 25-2-314(c). The trial court found as a fact that "subsequent to purchasing the subject vehicle, plaintiff experienced considerable problems with the vehicle remaining roadworthy and came to defendant on a number of occasions seeking to have the vehicle repaired 'pursuant to the warranty.'" There was no evidence that plaintiff sought to have the repairs made pursuant to the service contract or that defendant had filed claims for the repairs pursuant to that contract. Thus, we find this part of the finding to be surplusage as it is unsupported by the evidence. Plaintiff's evidence indicated he had returned the car to defendant for repairs on at least six occasions during the first six months of his ownership. The evidence also indicated plaintiff had driven the car a total of only 700 miles before he was informed the car was not repairable and before he permanently stopped driving the car in December 1989. This evidence was unrefuted and undisputed. There is no suggestion by defendant that the representations made with respect to the faulty condition of the car were not as represented by the plaintiff.

ISMAEL v. GOODMAN TOYOTA

[106 N.C. App. 421 (1992)]

Under the circumstances of this case, plaintiff's evidence demonstrated that the car was unfit for its ordinary purpose at the time of the sale and was therefore "unmerchantable" at that time.

Third, the evidence showed that plaintiff was injured by the purchase of the used car. The purchase price of the car was $5,054.00. Plaintiff traded in a car valued at $1,600.00 towards the purchase price of the car and service agreement and financed the remaining balance for a total cost of $7,414.60. Plaintiff continued making payments on the car loan up to the time of trial. Yet, plaintiff had the car for less than two weeks of his first four months of ownership because he had to return the car to defendant for repair, and on each occasion defendant kept the car one to three weeks, leaving plaintiff without its use for transportation. Plaintiff has been unable to drive the car since December 1989 due to its unroadworthy condition which is not repairable. Further, plaintiff was able to drive the car a total of only 700 miles in between repairs prior to that time. In essence, plaintiff was denied the benefit of his bargain.

Fourth, plaintiff's evidence clearly proved that the car's mechanical defects made the car unfit for its ordinary purpose of providing reliable transportation to the plaintiff and his family, and thus established the injury. Furthermore, the evidence showed that the car's mechanical defects were the proximate cause of plaintiff's resulting injury.

Finally, the evidence clearly established that plaintiff gave timely notice of the defects in the car to defendant. The first time plaintiff returned the car was the day immediately following his purchase. Plaintiff then repeatedly returned the car to defendant for repair. Each time plaintiff took the car back to defendant, defendant was unable to satisfactorily repair it.

[5] For the foregoing reasons, we conclude that plaintiff's evidence conclusively established the necessary requirements to recover damages from defendant for breach of the implied warranty of merchantability. Thus, the trial court improperly concluded that defendant was not liable to plaintiff for breach of warranty. We also note at this point that the trial court's conclusion that "the duty and warranty obligations in this matter ran to the General Warranty company under the service contract and not to defendant dealership" was contrary to the evidence presented by plaintiff. The service agreement specifically and unambiguously states in

two distinct places that "The Administrator [*i.e.*, General Warranty Co.] is not a party to this Agreement nor to the sale or lease of your car." Furthermore, the agreement states that it is between plaintiff and the dealer who sold the car, i.e. defendant. We therefore hold that the trial court's conclusion of law numbered 4 was also erroneous.

## III.

### DAMAGES

The remaining issue with regard to plaintiff's claim is the amount of damages he is entitled to recover. Having improperly concluded that the "as is" sale negated defendant's responsibilities under the implied warranty of merchantability, the trial court made no findings of fact or reached any conclusions of law with regard to the issue of damages.

Plaintiff is entitled to any remedy provided by the Act. Moreover, since the Act does not invalidate or restrict any right or remedy available to a consumer under State law, plaintiff is entitled to the remedy provided by our State law for breach of the implied warranty of merchantability.

## IV.

### CONCLUSION

For the reasons set forth above, we hold that the trial court erred in concluding that (1) defendant bore no responsibility for subsequent repair of the vehicle or its roadworthiness, (2) defendant bore no responsibility for repairing the vehicle notwithstanding any agreements made subsequent to the purchase of the vehicle in "as is" condition, (3) defendant is not liable to plaintiff for breach of warranty, and (4) plaintiff is not entitled to recover any money from defendant.

Since, as stated earlier, plaintiff conclusively established his entitlement to relief, the only issue remaining to be resolved is the amount of damages to which plaintiff is entitled. Following a partial new trial on the issue of damages, the trial court shall enter an appropriate judgment consistent with this opinion. *See Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 65 N.C. App. 242, 310 S.E.2d 33 (1983), *disc. review denied*, 310 N.C. 624, 315 S.E.2d 689, *cert. denied*, 469 U.S. 835, 83 L.Ed.2d 69 (1984).

Since the issues above are dispositive of this appeal, we decline to address plaintiff's other assignments of error.

Reversed and remanded.

Judges ARNOLD and EAGLES concur.