88 P.3d 1149

**Terri LEMONS, Plaintiff–Appellant,**

v.

**SHOWCASE MOTORS, INC., dba Showcase Pontiac–GMC–Mazda, Defendant–Appellee.**

No. 1 CA–CV 02–0650.

Court of Appeals of Arizona, Division 1, Department E.

April 29, 2004.

**538**

Krohn & Moss, Ltd., Phoenix, by Marshall Meyers, Attorneys for Plaintiff–Appellant.

Norling, Kolsrud, Sifferman & Davis, P.L.C., Phoenix, by Darrell E. Davis and Tracy L. Carlson and Ryan J. Lorenz, Attorneys for Defendant–Appellee.

## OPINION

THOMPSON, Judge.

¶ 1 Terri Lemons appeals from a grant of summary judgment to Showcase Motors, Inc., dba Showcase Pontiac–GMC–Mazda (Showcase) on her claims for breach of the implied warranty of merchantability under the Magnuson–Moss Warranty Act, 15 U.S.C. sections 2301–2312 (1998) (the Act). For the following reasons, we reverse and remand the case to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Lemons bought a used 1999 Dodge Durango (Durango) from Showcase. The parties' sales contract (sales contract) states that Lemons purchased the Durango "AS IS—NOT EXPRESSLY WARRANTED OR GUARANTEED."

¶ 3 Lemons alleged that the Durango's brakes failed, the power windows were defective, and there was frame damage. After a series of unsuccessful repair attempts, Lemons sent Showcase a letter revoking her acceptance. Showcase refused Lemons's tender, and this lawsuit followed.

¶ 4 In her complaint, Lemons asserted breach of the implied warranty of merchantability and revocation of acceptance pursuant to the Act. With respect to the implied warranty claim, Lemons alleged that she had also purchased an "extended warranty/service contract" (service contract) from Showcase, administered on behalf of Showcase by Mechanical Protection Plan (MPP).

¶ 5 Showcase obtained summary judgment on both claims. In a subsequent application for attorneys' fees and costs, Showcase requested $5725 in fees in accordance with Arizona Revised Statutes (A.R.S.) section 12–341.01(A) (2001). The trial court ruled that Showcase was entitled to $3395 under the statute and entered judgment. In addition,

the trial court denied Lemons's motion for reconsideration. This appeal followed.

## DISCUSSION

¶ 6 When reviewing a grant of summary judgment, we determine de novo whether any genuine disputes of material fact exist and whether the trial court accurately applied the law. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124–25, 938 P.2d 1124, 1125–26 (App.1997) (citing *Colonial Tri–City Ltd. P'ship v. Ben Franklin Stores, Inc.*, 179 Ariz. 428, 432, 880 P.2d 648, 652 (App.1993)). We view all facts in the light most favorable to the party against whom summary judgment was granted. *Id.*

### A. The Magnuson–Moss Warranty Act applies to Lemons's claims

¶ 7 The parties contest whether the Act applies to Lemons's claims. The Act provides a cause of action to a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1). In this case, Lemons purchased the Durango for personal use and not for resale, thus qualifying her as a consumer. *See Ismael v. Goodman Toyota*, 106 N.C.App. 421, 417 S.E.2d 290, 293 (1992). In addition, the Durango is a consumer product because it is tangible personal property distributed in commerce and put to family, personal, and household uses. *Id.* Moreover, Showcase is a supplier within the meaning of the Act because it is in the business of making cars directly available to consumers. *See id.* at 293–94. Accordingly, the Act applies. *See id.* at 294. The pivotal question on appeal is whether Showcase effectively disclaimed the implied warranty of merchantability.

### B. Fact issues regarding whether Showcase effectively disclaimed the implied warranty of merchantability should have prevented summary judgment

¶ 8 According to the Act, an implied warranty arises under state law in connection with the sale by a supplier of a consumer product. 15 U.S.C. § 2301(7). In Arizona, an implied warranty of merchantability arises in a contract for a sale of goods by a merchant unless excluded or modified. A.R.S. § 47–2314(A) (1997). As a general rule, an "as is" sale excludes such a warranty after the statutory fifteen-day and 500–mile limits. A.R.S. § 47–2316(C)(1) (1997); A.R.S. § 44–1267(B)(2003). The Act, however, limits the supplier's ability to disclaim or modify implied warranties by providing:

> No supplier may disclaim or modify ... any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a).

¶ 9 In response to the motion for summary judgment, Lemons submitted an affidavit stating that Showcase's agents made oral statements leading her to believe that the MPP service contract was Showcase's own service contract. For example, she pointed out that Showcase offered the service contract to her, Showcase was the sole negotiator and had authority to negotiate the contract, Showcase told Lemons that she could return to the dealer's service facility for repairs under the contract, and Lemons paid Showcase $2999 for the service contract.

¶ 10 Under the Act, a warranty is:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such materials or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

¶ 11 Lemons contends that the service contract sold by Showcase prevented disclaimer. The Act defines a service contract with a consumer as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8).

¶ 12 In *Priebe v. Autobarn, Ltd.*, the Seventh Circuit held that a car dealer's disclaimer of an implied warranty was effective despite the dealer's sale of a third-party warranty to a consumer. 240 F.3d 584 (7th Cir.2001). There, the dealer sold the vehicle "as is" and disclaimed all implied warranties. *Id.* at 586. The dealer also sold the consumer a service contract administered by Automobile Protection Corporation (APCO). *Id.* The Seventh Circuit held that

the service contract cannot be construed as creating a warranty of merchantability because the service contract bound APCO, not [the dealer], to repair the Acura. [Plaintiff] has not articulated how [the dealer] is a party to the contract. Therefore, we conclude that the service contract with APCO is not sufficient to prevent [the dealer] from disclaiming implied warranties.

*Id.* at 588; *see also* 15 U.S.C. § 2310(f) ("For purposes of this section, only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person.").

¶ 13 Lemons contends, however, that Showcase adopted the manufacturer's warranty. Lemons claims that, in her motion for reconsideration, she supplied the trial court with Showcase's "dealer vehicle service contract agreement" with MPP to perform its warranty repairs, a document she allegedly received in the course of litigation. Because Lemons did not receive this document until after she responded to the motion for summary judgment, we will consider it.

¶ 14 In support of her adoption argument, Lemons invokes *Felde v. Chrysler Credit Corp.*, 219 Ill.App.3d 530, 162 Ill.Dec. 565, 580 N.E.2d 191 (1991). Her reliance on this case is misplaced. The *Felde* buyers received a written warranty from the manufacturer, and the dealer's sales invoice stated that it made no warranties regarding the car "excepting only Chrysler Corporation's current printed warranty applicable to such vehicle or vehicle chassis which warranty is incorporated herein and made a part hereof and a copy of which will be delivered to buyer at the time of delivery of the new motor vehicle or motor vehicle chassis." *Id.* 162 Ill.Dec. 565, 580 N.E.2d at 197. The Illinois Court of Appeals concluded that the dealer adopted the manufacturer's warranty by incorporating it into the invoice, which set forth the conditions of sale. *Id.* Consequently, the disclaimer of implied warranties was invalid under 15 U.S.C. § 2308. *Id.* Here, no warranty was adopted by reference in the documents evidencing the sale of the Durango to Lemons. Therefore, Showcase did not "adopt" any warranty.

¶ 15 This case is not one in which Showcase made a written promise to the buyer in a sales contract to perform services under a written warranty. In two such cases, the sales contracts provided that the selling dealer also "agrees to promptly perform and fulfill all terms and conditions of the owner service policy." *Rothe v. Maloney Cadillac, Inc.*, 142 Ill.App.3d 937, 97 Ill.Dec. 61, 492 N.E.2d 497, 503 (1986), *aff'd in part and vacated in part*, 119 Ill.2d 288, 116 Ill.Dec. 207, 518 N.E.2d 1028 (1988); *Ventura v. Ford Motor Corp.*, 180 N.J.Super. 45, 433 A.2d 801, 809 (App.Div.1981). These explicit undertakings, made to the consumers, invalidated the disclaimers of implied warranties. Showcase made no such written representations.

¶ 16 Nonetheless, we do find a fact issue with regard to whether, under principles of contract construction, Showcase was a party to the service contract. The "dealer vehicle

service contract agreement" provides, in relevant part:

6. That MPP Co., Inc. or their representative may sign service contracts on behalf of the Dealer upon receipt of an application from the Dealer.

7. That the Dealer shall be the sole contracting party with customers under all Service Contracts and MPP Co., Inc. shall have no liability to customers. MPP Co., Inc. assumes no obligations, duty or liability with respect to Dealer's performance under said Contracts. Dealer shall defend, indemnify, and hold MPP Co., Inc. harmless from all damages, costs, attorney's fees, loss or liabilities which MPP Co., Inc. may sustain arising out of or incident to Dealer's failure to perform under said Service Contracts.

The language of these paragraphs seems to indicate that Showcase and MPP intended that Showcase would be the contracting party with customers under service contracts administered by MPP. *See Harris v. Harris,* 195 Ariz. 559, 562, ¶ 15, 991 P.2d 262, 265 (App.1999) (citations omitted) (stating that contracts must be read in light of the parties' intentions as reflected by their language and in view of all circumstances). Such an interpretation is reasonable given that paragraph 6 states that MPP could sign the service contract on behalf of Showcase, indicating that Showcase indeed was a party to the service contract. In addition, paragraph 7 plainly states that Showcase "shall be the sole contracting party with customers under all Service Contracts."

 ¶ 17 If Showcase was a party to the service contract, it could not have effectively disclaimed any warranties under the Act. *See* 15 U.S.C. § 2308(a)(2) (stating that a suppli-

er cannot disclaim an implied warranty to a consumer with respect to a consumer product if the supplier enters into a service contract with the consumer that applies to the consumer product at the time of sale or 90 days thereafter). The "dealer vehicle service contract agreement" was not before the court when it granted summary judgment. We conclude that the agreement creates a fact issue regarding whether Showcase itself was a party to the service contract and that the grant of summary judgment should have been reconsidered.[1]

## C. Attorneys' fees

¶ 18 The parties dispute whether Showcase is entitled to recover attorneys' fees. Because we reverse the grant of summary judgment, we need not reach this issue because there is no successful party.

## CONCLUSION

¶ 19 We reverse both the trial court's grant of summary judgment and award of attorneys' fees to Showcase and remand for proceedings consistent with this opinion. In addition, we decline to award either party attorneys' fees incurred on appeal.

CONCURRING: G. MURRAY SNOW, Presiding Judge, and JOHN C. GEMMILL, Judge.

---

1. Lemons also raises the following legal arguments on appeal: (1) Showcase sold Lemons a contract with illusory protection, (2) Showcase engages in trickery by telling consumers that they have to purchase a service contract in order to obtain a warranty of merchantability, and (3) the warranty disclaimers were not conspicuous or otherwise effective. Lemons did not include these arguments in her response to the motion for summary judgment. Legal issues and arguments must be presented to the trial court and generally cannot be raised for the first time on

appeal. *See McDowell Mountain Ranch Land Coalition v. Vizcaino,* 190 Ariz. 1, 5, 945 P.2d 312, 316 (1997). We therefore decline to consider these arguments on appeal.

Lemons also raises for the first time on appeal her assertion that Showcase advertised the service contract in the buyers guide. We cannot consider new factual theories raised for the first time on appeal from summary judgment. *See Napier v. Bertram,* 191 Ariz. 238, 239, ¶ 6, 954 P.2d 1389, 1390 (1998).