NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

CITY OF PHOENIX, *Plaintiff/Appellee*,

*v.*

EQUITY RECOVERY SPECIALISTS, LLC, *Defendant/Appellant*.

———————————————

VICTORIA GONZALES, et al., *Defendants/Appellees*.

———————————————

No. 1 CA-CV 22-0193
FILED 11-22-2022

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2019-012216
No. CV2021-014553
The Honorable Jay R. Adleman, Judge
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

———————————————

COUNSEL

Law Offices of Kyle A. Kinney, PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Defendant/Appellant*

Ramras Legal, PLC, Phoenix
By Ari Ramras
*Counsel for Defendants/Appellees Demian Heald and Bridge1 LLC*

---

**MEMORANDUM DECISION**

---

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

**¶1** Appellant Equity Recovery Specialists, LLC ("Equity") challenges the superior court's dismissal of its complaint stemming from an excess-proceeds dispute currently pending in another case. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** The City of Phoenix judicially foreclosed on two abatement liens it held against a West Portland Street property (the "Excess Proceeds Case"). In its complaint, the City named (1) Ronald A. Bacon, Sr., who the City alleged had owned the property up to his death in 2009; (2) Victoria Gonzales, who the City alleged "claims to have an ownership interest . . . by virtue of an unrecorded deed or other documents"; and (3) Patricia Moate, now known as Patricia Hardie, on behalf of the estate of Benjamin Banik, which the City alleged held a mortgage note recorded against the Property in 1985 (the "Banik Note").

**¶3** The City obtained a default judgment, the property was sold at a sheriff's sale, and the sheriff deposited nearly $90,000 in excess proceeds with the court. Durable Investments, LLC ("Durable") applied to recover the excess proceeds, contending it received an assignment of the Banik Note. Aloha Properties I, LLC ("Aloha") also applied, contending it received an assignment from the Banik estate in 2020. Aloha later withdrew its application.

**¶4** Approximately two months later, Equity applied to recover the excess proceeds. Equity claimed the excess proceeds through an assignment from Gonzales whom Equity alleged purchased the property from Bacon in 1993. Four months later, Bridge1, LLC ("Bridge1") intervened and applied to recover the excess proceeds. Bridge1 claimed the proceeds through quitclaim deeds it obtained from Bacon's heirs (the "Quitclaim Deeds").

**¶5** The parties stipulated to vacate an upcoming evidentiary hearing based on Bridge1's appearance. Equity then objected to Bridge1's

application, contending among other things that Bridge1 and Durable were "the same party working towards a common purpose for the benefit of the same sole principal," Demian Heald.

**¶6**         Shortly thereafter, Equity filed this lawsuit against Bridge1, Durable, Heald, Hardie, and numerous other parties associated with either Banik or Bacon (the "Declaratory Judgment Case"). Equity alleged Gonzales "continue[d] to retain ownership of a statutory incidental interest . . . that survives the foreclosure sale . . . consisting of the Excess Proceeds on deposit with the Court . . . in the nature of real property." On that basis, Equity sought a declaration that (1) it was the assignee of Gonzales' interest in the excess proceeds, (2) Durable's and Bridge1's applications were meritless, and (3) the Banik Note was time-barred. Equity also sought damages for slander of title, interference with contract, and alleged violations of Arizona Revised Statutes ("A.R.S.") section 33-420.

**¶7**         Equity moved to consolidate the Excess Proceeds Case and the Declaratory Judgment Case. Bridge1 and Heald then moved to dismiss the Declaratory Judgment Case complaint. Durable and Hardie joined in the motion. The superior court granted consolidation, granted Bridge1's and Heald's motion, and entered a final Ariz. R. Civ. P. ("Rule") 54(b) judgment dismissing the Declaratory Judgment Case complaint with prejudice. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶8**         We review a complaint's dismissal under Rule 12(b)(6) de novo. *CVS Pharmacy, Inc. v. Bostwick ex rel. County of Pima*, 251 Ariz. 511, 516, ¶ 10 (2021). We accept as true all well-pleaded facts and give Equity the benefit of all inferences arising therefrom. *Botma v. Huser*, 202 Ariz. 14, 15, ¶ 2 (App. 2002). We will affirm only if Equity would not have been entitled to relief under any interpretation of the facts susceptible of proof as a matter of law. *Mesnard v. Campagnolo*, 251 Ariz. 244, 248, ¶ 11 (2021) (citation and quotation marks omitted).

I.      A.R.S. § 33-420 Claims

**¶9**         Equity contends the superior court erred in dismissing its A.R.S. § 33-420 claims, which were based on its allegation that Heald or Bridge1 falsely recorded the Quitclaim Deeds. Only an owner or beneficial title holder may pursue a claim under § 33-420:

A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property . . . .

B. The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions.

A.R.S. § 33-420.

¶10 Equity conceded in its application that it was "not the beneficial titleholder" and therefore "not entitled to damages or an action to clear title." Nonetheless, it now asks us to confer standing on "a party like Gonzales" who "still has a residual ownership interest (equity) to pursue a false document claim." Gonzales is not a party to the Declaratory Judgment Case.

¶11 Additionally, while Equity is vague as to what "residual ownership interest" Gonzales allegedly retained after foreclosure, it describes Gonzales' "statutory incidental interest" as an interest "in the Excess Proceeds." Excess proceeds are not real property or an interest therein. *See, e.g.*, *Proceeds*, Black's Law Dictionary (11th ed. 2019) (defining proceeds as "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale"). Moreover, even if Gonzales somehow retained a "residual ownership interest" after the foreclosure sale, she did not assign any such interest to Equity. She only assigned her "statutory rights to any Excess Proceeds" and the right to "bring any action . . . to enforce collection or release of the Excess Proceeds."

¶12 Equity also contends we should recognize a public policy that protects "financially vulnerable foreclosed homeowner[s] like Gonzales . . . from third parties . . . seeking to commandeer her equity and profit off her misfortune." Again, Gonzales is not a party to the Declaratory Judgment Case. The superior court did not err in dismissing Equity's § 33-420 claims.

4

II.     Slander of Title

**¶13**         Equity next contends the superior court erred in dismissing its slander of title claims because "non-owner tenants can bring a slander of title claim." *See City of Tempe v. Pilot Props., Inc.*, 22 Ariz. App. 356, 363 (1974).  Equity was not a tenant.  It instead alleged that it "is the owner, through assignment . . . of the Excess Proceeds and the chose-in-action [sic] coupled thereto, for recovery of the Excess Proceeds resultant from her incidental property interest surviving the foreclosure sale."  Equity cites no legal authority suggesting that an assignee of an excess-proceeds claim has standing to pursue a slander of title claim.  *See, e.g.*, *Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987) ("Slander of title involves false and malicious communications . . . *disparaging to one's title in land* . . . and causing special damage . . . .") (internal citations omitted, emphasis added).

III.    Declaratory Relief

**¶14**         The superior court dismissed Equity's declaratory relief claims because they "pertain[ed] to issues already pending" in the Excess Proceeds Case.  *See Merritt-Chapman & Scott Corp. v. Frazier*, 92 Ariz. 136, 139 (1962) ("It was never intended that the relief to be obtained under the Declaratory Judgment Act should be exercised for the purpose of trying issues involved in cases already pending.") (citation omitted).  We agree.

**¶15**         Equity's first declaratory relief claim asks the superior court to declare that Equity "is holder by way of assignment of the right to make Application to the Superior Court for the Excess Proceeds" and that Bridge1's and Durable's competing applications "have no merit."  Its second and third declaratory relief claims also seek, in relevant part, a declaration that Durable's application "is meritless and must be denied."  The merits of those applications are at issue in the Excess Proceeds Case.

**¶16**         Equity contends that forcing it to litigate in what it calls a "short cause proceeding" in the Excess Proceeds Case would deprive it of "normal judicial process."  Equity does not specify what "normal judicial process" it would not receive in a hearing under A.R.S. § 12-1562(A), and the statute does not include any limits on discovery or disclosure.  In any event, the hearing has been continued twice to allow the parties to conduct discovery.  Equity therefore did not show that it would be deprived of due process if the Declaratory Judgment Complaint is dismissed.

IV.     Quiet Title

**¶17**          Equity asks us to "clarify, modify, or expand the existing judicial interpretation" of the quiet title statutes "to provide relief as it pertains to a residual title interest, such as Gonzales' equity in this case." We need not do so because (1) Gonzales is not a party to this case, and (2) Equity only received an assignment of Gonzales' rights, if any, to recover the excess proceeds.  A quiet title action can only be brought to "quiet title to real property," which excess proceeds are not.   A.R.S. § 12-1101. Moreover, whatever title interest Gonzales may have had was extinguished by the foreclosure judgment, which was entered before Gonzales assigned her excess proceeds claim to Equity.  Title then passed to the purchaser at the sheriff's sale.

V.      Tortious Interference with Contract

**¶18**          A plaintiff claiming tortious interference with a contract must allege:

>    (1) the existence of a valid contractual relationship;

>    (2) knowledge of the relationship on the part of the interferor;

>    (3) intentional interference inducing or causing a breach;

>    (4) resultant damage to the party whose relationship has been disrupted; and

>    (5) that the defendant acted improperly.

*ABCDW LLC v. Banning*, 241 Ariz. 427, 437, ¶ 37 (App. 2016) (citation omitted).   Equity contends its tortious interference claim was not ripe because the excess proceeds have not been distributed, and the court therefore could not determine whether Appellees intentionally interfered or whether Equity suffered damages.  It therefore requests that we direct the superior court to instead dismiss this claim without prejudice.

**¶19**          It is Equity's complaint and appeal in this case that are blocking distribution of the excess proceeds.  Moreover, Equity took a different position in the superior court:

>    Even if the interference is unsuccessful, it will result in
>    damages to E[quity] and Gonzales.  The [Quitclaim Deeds]
>    were not recorded to convey some interest or expectation of a
>    future interest. . . . The recording was made to block E[quity]

from exercising the contracted-for assignment, **and for no other reason**.

We will not consider Equity's changed position on appeal. *See Hannosh v. Segal*, 235 Ariz. 108, 115, ¶ 25 (App. 2014) ("[W]e generally will not consider arguments that were not presented to the trial court for the first time on appeal . . . ."); *see also Lemons v. Showcase Motors, Inc.*, 207 Ariz. 537, 541, ¶ 17 n.1 (App. 2004) (declining to consider arguments that were not asserted in response to summary judgment motion).

VI.     Sanctions on Appeal

**¶20**        Bridge1 and Heald request sanctions under A.R.S. § 12-349 and ARCAP 25.  We may impose § 12-349(A) sanctions if a party

> 1. [b]rings or defends a claim without substantial justification.

> 2. [b]rings or defends a claim solely or primarily for delay or harassment.

> 3. [u]nreasonably expands or delays the proceeding. or

> 4. [e]ngages in abuse of discovery.

Appellees do not show any of the above apply.  We therefore decline to award § 12-349 sanctions.

**¶21**        Bridge1 and Heald contend ARCAP 25 sanctions are warranted based on Equity's allegations that they "'coax,' 'bribe' and 'swindle' claimants for 'predatory' and 'trash' assignments and make 'bogus' and 'fraudulent' applications."  We may impose ARCAP 25 sanctions if a party uses "abusive language and argument," but we do not do so lightly. *Ramos v. Nichols*, 252 Ariz. 519, 523-24, ¶¶ 12, 14 (App. 2022).  In our discretion, we decline to award ARCAP 25 sanctions.

### CONCLUSION

**¶22**        We affirm.

