ELLA MAE TEDDER v. PEPSI-COLA BOTTLING COMPANY OF RALEIGH, N. C., INC. AND COLONIAL STORES, INC., T/A K-MART FOODS.

(Filed 10 May, 1967.)

**1. Food § 1—**

Negligence on the part of the bottler is not established by the showing that one bottle alone out of some eight million contained a deleterious substance.

**2. Food § 2—**

The retailer of food sells to the consumer under implied warranty of fitness for human consumption, and may be held liable by the consumer for damages resulting from breach of such warranty.

**3. Food § 3—**

A retailer buying a product for human consumption in a sealed container may hold the jobber liable for breach of implied warranty of fitness, and the jobber, in turn, by showing loss, may hold the manufacturer, processor or bottler liable.

**4. Food § 1— Evidence in this case held for jury on issue of bottler's liability to ultimate consumer on implied warranty.**

The evidence tended to show that defendant bottler advertised its product by appeals to consumers, that the bottler's agent delivered to the

retailer bottles prepared ·by the bottler and placed them on the retailer's shelves, that plaintiff took a pack from the shelf, paid the retailer, and placed the bottles in a cabinet at his home, and, the following day, opened a bottle, drank a part therefrom, and became sick as a result of a deleterious substance therein. *Held:* The evidence is sufficient to be submitted to the jury on the theory of the bottler's liability to plaintiff on implied warranty in view of the manner in which the drink was advertised and traveled from the bottler to plaintiff.

PARKER, C.J., concurs in result.

APPEAL by plaintiff from *Mallard, J.,* Second October Regular Civil Session, 1966, WAKE Superior Court.

The plaintiff, Mrs. Ella Mae Tedder, instituted this civil action for damages against Pepsi-Cola Bottling Company of Raleigh, N. C., Inc., the bottler, and Colonial Stores, Inc., t/a K-Mart Foods, also of Raleigh, the retailer of Pepsi-Cola.

The plaintiff alleged she was seriously injured and damaged as a result of having consumed part of a bottle of Diet Pepsi-Cola which contained contaminated and deleterious matter. She alleged defendant Pepsi-Cola Company, by way of promotion and advertising addressed directly to the consumer over radio, television and in the press, impliedly warranted Diet Pepsi-Cola as wholesome and fit for human consumption.

As against the retailer, plaintiff alleged she purchased the contaminated Diet Pepsi-Cola from defendant Colonial Stores, Inc. and by offering the same for sale and selling it to her, knowing it would be used as a beverage and for no other purpose, Colonial impliedly warranted its wholesomeness and fitness for that purpose. The plaintiff alleged breach of warranties against both defendants and her damages as a result of her having relied upon them.

The defendant Pepsi-Cola Bottling Company of Raleigh, N. C., Inc. filed answer, admitting the identity of the parties, their location, residences and places of business as alleged in the complaint, but denying all its other material allegations. The co-defendant, Colonial Stores, Inc., on March 18, 1966, filed a demurrer based upon the alleged failure of the complaint to state a cause of action for that the complaint alleged the deleterious substance was in the bottle when it left the bottler's plant and remained in the same condition until it was opened in the plaintiff's home. However, the record does not disclose the disposition of the demurrer, but on the contrary, does show that on September 27, 1966 the Colonial Stores, Inc. filed an answer denying liability and alleging a cross-action against the co-defendant based on the bottler's implied warranty of the drink as fit for human consumption and, for any breach of

that warranty, the bottling company should be adjudged primarily responsible.

The evidence disclosed the Pepsi-Cola Bottling plant and Colonial Stores are both located on the Wake Forest Road in Raleigh. Colonial sells 12,000 to 15,000 bottles of Pepsi per week. All are bottled by the co-defendant in its Raleigh plant and delivered by it and placed on the Colonial Stores shelves where Colonial's customers serve themselves, pick up the packs of bottles and pay as they check out.

On June 30, 1965 the plaintiff and her husband purchased a six pack of Diet Pepsi from Colonial Stores, took the pack home and placed it in a cabinet. About noon the next day the plaintiff's husband opened one of the bottles, poured part of the contents over clean ice cubes, in a clean glass, and handed it to the plaintiff, who drank part of it before she detected anything wrong with the drink. She was not accustomed to the taste of Diet Pepsi-Cola and did not realize until she had taken a quantity of the drink that it contained a deleterious substance.

On making the discovery, she called a doctor, who treated her and testified as to her suffering and distress resulting from the contaminated drink. A chemist analyzed the remaining contents of the bottle and described the contamination to the Court and jury.

The plaintiff offered the adverse examination of Mr. Gaddy, President of Pepsi-Cola Bottling Company of Raleigh, who testified that his plant bottles 200,000 drinks per day. "Our company has advertised and promoted Diet Pepsi to the public. The advertisement consisted primarily of TV commercials. . . . we did run commercials, . . . on both of the stations (Raleigh and Durham). . . . the advertising commercial, it is a song or jingle . . . 'Come alive, you are in the Pepsi Generation' . . . the purpose of these advertisements and commercials were *(sic)* to increase the consumption of Diet Pepsi-Cola by the public in this area. . . . Our company delivers to the K-Mart (Colonial) and puts them on the rack."

. Mr. Garris, manager of K-Mart (Colonial) testified Pepsis are delivered to the store and placed in the racks by the bottler. "We never touch the Pepsis."

Plaintiff's husband testified he picked up the six pack of Pepsis and carried them home and at the time he opened the bottle, it was in the same condition as when it came from the store. At the conclusion of testimony, the Court entered judgments of involuntary nonsuit against both defendants. The plaintiff excepted and appealed.

*Yarborough, Blanchard, Tucker & Yarborough for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay by I. Edward Johnson for defendant Bottling Company.*

*Smith, Leach, Anderson & Dorsett by Henry A. Mitchell, Jr., for defendant Colonial Stores.*

HIGGINS, J. The testimony presented at the trial was free from material conflict. The President of Pepsi-Cola Bottling Company of Raleigh, N. C., Inc. was adversely examined as plaintiff's witness. He testified: "During the month of June, 1965, we would run 200,000 bottles per day. It is not uncommon to run 10,000 cases or 240,000 bottles a day on the equipment. . . . during the month of June, 1965, to my knowledge we received no complaint from anyone saying that they had purchased Pepsi or Diet Pepsi containing foreign or deleterious substance." During the month, approximately 8 million bottles were filled. Under the rules heretofore applied, liability of the bottler on the basis of negligence is not established by showing that one bottle out of 8 million contained a deleterious substance. *Enloe v. Bottling Co.,* 208 N.C. 305, 180 S.E. 582; *Collins v. Bottling Co.,* 209 N.C. 821, 184 S.E. 834; *Jenkins v. Hines Co.,* 264 N.C. 83, 141 S.E. 2d 1.

If the bottling company is to be held liable in this case, it must be on implied warranty. The cases are many which hold that warranty of fitness, either express or implied, is contractual; that the contract extends no further than the parties to it and that privity to the contract is the basis of liability. *Murray v. Aircraft Corp.,* 259 N.C. 638, 131 S.E. 2d 367; *Terry v. Bottling Co.,* 263 N.C. 1, 138 S.E. 2d 753. However, our Court has heretofore relaxed the privity rule in certain cases involving food and drink because of their importance to health. "Authorities generally hold that the manufacturer, processor and packager of goods and the bottler of drinks intended for human compumption are held to a high degree of responsibility to the ultimate consumer to see to it that the food and drink are not injurious to health." *Terry v. Bottling Co., supra.* The liability generally has been based on negligent failure to discharge this high degree of responsibility. However, in *Terry,* liability to the consumer on warranty (contract law) may arise if the warranty is by representation addressed to the ultimate consumer by label attached to the container. See also *Service Co. v. Sales Co.,* 261 N.C. 660, 136 S.E. 2d 56.

To a certain extent, the Court has already chipped away some of the rigidity which heretofore has limited warranty liability to the

parties to the contract. The limitation of warranty to the contract-
ing parties has been under vigorous assault over all the country.
The assault has been successful in all but a few jurisdictions. See
Prosser, THE ASSAULT UPON THE CITADEL, 69 Yale L.J. 1099; 50
Minn. L. Rev. 791; 18 Hastings L. J. 9; 36 S. Cal. L. Rev. 291; 16
Baylor L. Rev. 337; 37 Mich. L. Rev. 1; 19 N. C. L. Rev. 551; 24
Va. L. Rev. 134; 74 A.L.R. 2d 1111. In addition, see many author-
ities cited and discussed by Sharp, J., concurring in *Terry v. Bot-
tling Co.*, 263 N.C. 1, 138 S.E. 2d 753, 77 A.L.R. 2d 215. In these ci-
tations, hundreds of cases are listed.

Under our present rules, this is where we are in the sale of food
and drink for human consumption. The retailer sells to the consumer
under implied warranty of fitness. For breach of that warranty the
damaged consumer may recover. The retailer bought the product
under an implied warranty of fitness from the jobber, whom he may
hold for breach of warranty. The jobber, in line, by showing loss,
may go back to the manufacturer, processor, or bottler on whom the
final responsibility rests. Step by step the liability goes back to the
source. *Service Co. v. Sales Co., supra; Ashford v. Shrader*, 167 N.C.
45, 83 S.E. 29; 77 C.J.S., Sales, Sec. 384, p. 1338. Admittedly there
are some objections to holding the manufacturer, processor, or bot-
tler of food or drink as implied warrantors in favor of the ultimate
consumer: (1) Lack of control over the product after the first de-
livery and (2) extending the implied warranty from the producer to
the ultimate consumer opens the door for fraudulent claims. Most
appellate courts have brushed aside these objections on the ground
they apply horse and buggy law to the jet age.

In this case these are the facts before us: Pepsi-Cola Bottling
Company of Raleigh, N. C., Inc. advertised its product over TV
stations in Raleigh and Durham, addressing its appeal to the con-
sumer, intending thereby to promote sales. The bottler's agent com-
pleted the delivery of the bottles to Colonial's store by placing them
on Colonial's shelves. The plaintiff took a six pack of Diet Pepsi
from the shelf, paid Colonial, placed the bottles in the cabinet at
home, and the following day plaintiff drank the deleterious sub-
stance, became sick, and suffered the harmful result. Only the bot-
tler and the plaintiff actually handled the drink. The Colonial Store
sold it to the claimant who drank it. Implied warranty attached and
made out a case for the jury against Colonial. Under the authorities
and for the reasons herein discussed, we hold the bottler, by adver-
tising and sales promotion addressed to the consumer, induced her
to "Come Alive" and that she was "in the Pepsi Generation". The
advertising was intended to promote the use by the consumer to

whom the advertising was addressed. The evidence in this case was sufficient to go to the jury on the theory of implied warranty resulting from the manner in which the Pepsi-Cola was advertised and traveled from the bottler to the plaintiff.

The questions whether by marketing food and drink in sealed containers the processor thereby impliedly warrants fitness for human use and whether the warranty extends directly to the ultimate consumer who breaks the seal, are questions not fully presented on this record. The answers will come when the facts present the questions.

If damages are to be assessed, the question of primary and secondary liability may be fixed by the judgment. The case should go back for a jury trial as to both defendants.

Reversed.

PARKER, C.J., concurs in result.