CHRIS T. PHILLIPS, Plaintiff v. RESTAURANT MANAGEMENT OF CAROLINA, L.P., a
Delaware Limited Partnership, TACO BELL CORP., a California Corporation, and
JASON PAUL JONES, Defendants

No. COA00-411

(Filed 18 September 2001)

## 1. Employer and Employee— vicarious liability—restaurant employee spat in trooper's food—summary judgment

The trial court erred by granting summary judgment in favor of defendant Restaurant Management on the issue of vicarious liability based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because: (1) there is a genuine issue of material fact as to whether the employee's acts were within the scope of his employment and in furtherance of Restaurant Management's business; and (2) the employee's concealed act of spitting into food while preparing it related directly to the manner in which the employee carried out his job duty of preparing the food for consumption by the customer.

## 2. Employer and Employee— ratification—restaurant employee spat in trooper's food—summary judgment

The trial court did not err by granting summary judgment in favor of defendant Restaurant Management on the issue of ratification based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because: (1) the employee did not communicate his act to any of his co-employees at the moment he contaminated the trooper's food; (2) there was no evidence that any of the co-employees witnessed the employee spitting in the food; (3) there was no evidence tending to show that Restaurant Management had any reason to suspect the employee would contaminate a customer's food or that a member of management had direct knowledge that the employee had contaminated the food; (4) immediately after the incident occurred, the employee denied any involvement in contaminating the trooper's food; and (5) evidence that Restaurant Management failed to contact the trooper after the employee admitted his involvement does not establish ratification when a supervisor confronted the em-

ployee on his next scheduled shift following the incident and accepted the employee's resignation, and Restaurant Management investigated the incident further and found the employee had acted alone.

### 3. Warranties— breach of implied warranty of merchantability—restaurant employee spat in trooper's food—summary judgment

The trial court erred by granting summary judgment in favor of defendant Restaurant Management on the issue of breach of implied warranty of merchantability based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because: (1) a food patron's ingestion of a food preparer's saliva constitutes an injury unto itself that is sufficient to satisfy the injury required to sustain a claim of breach of implied warranty of merchantability; and (2) there is no binding authority requiring a physical injury, or even a physical manifestation of a mental injury, to support a claim for breach of an implied warranty of merchantability.

### 4. Emotional Distress— intentional infliction—restaurant employee spat in trooper's food—summary judgment

The trial court erred by granting summary judgment in favor of defendant Restaurant Management on the issue of intentional infliction of emotional distress based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because: (1) it cannot be said as a matter of law that a food preparer spitting in food intended for a patron's consumption does not rise to the level of "extreme and outrageous;" and (2) the trooper alleged that he suffered severe emotional distress as a result of the consumption of the saliva-covered nachos.

### 5. Negligence— gross—restaurant employee spat in trooper's food—summary judgment

The trial court erred by granting summary judgment in favor of defendant Restaurant Management on the issue of gross negligence based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because there is a genuine issue of material

fact as to whether the employee's acts were within the scope of his employment and in furtherance of Restaurant Management's business.

**6. Damages and Remedies— punitives—restaurant employee spat in trooper's food—summary judgment**

The trial court did not err by granting summary judgment in favor of defendant Restaurant Management on the issue of punitive damages under N.C.G.S. § 1D-15 based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because the trooper failed to forecast any credible evidence that any officer, director, or manager of defendant Restaurant Management participated in or conducted any fraudulent, malicious, or willful or wanton act that might provide the basis for punitive damages.

**7. Agency— actual—apparent—vicarious liability—restaurant employee spat in trooper's food—summary judgment**

The trial court did not err by granting summary judgment in favor of defendant Taco Bell on the issue of vicarious liability under theories of agency or apparent agency based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because: (1) no evidence establishes the existence of an actual agency relationship between Taco Bell and the employee; (2) there is no evidence showing that the trooper relied or acted upon any representation or assertion of Taco Bell; and (3) there is no evidence that the trooper would have chosen to eat elsewhere or done anything differently had he known that the pertinent restaurant was not owned and operated by Taco Bell.

**8. Employer and Employee— ratification—restaurant employee spat in trooper's food—summary judgment**

The trial court did not err by granting summary judgment in favor of defendant Taco Bell on the issue of ratification based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because the fact that Taco Bell made no attempt to contact the trooper after the employee admitted spitting in the trooper's food does not establish ratification by Taco Bell.

9. **Warranties— breach of implied warranty of merchantability—products liability—restaurant employee spat in trooper's food—summary judgment**

The trial court did not err by granting summary judgment in favor of defendant Taco Bell on the issue of breach of implied warranty of merchantability under a products liability theory based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper because even if Taco Bell manufactured the food that was purchased and consumed by the trooper, plaintiff's claim fails because the food purchased was altered in a manner not originally intended by Taco Bell at a time after it left Taco Bell's control and without Taco Bell's express consent. N.C.G.S. § 99B-3(a).

10. **Employer and Employee— vicarious liability—intentional infliction of emotional distress—gross negligence—punitive damages—restaurant employee spat in trooper's food—summary judgment**

The trial court did not err by granting summary judgment in favor of defendant Taco Bell on the issues of intentional infliction of emotional distress, gross negligence, and punitive damages under the theory of vicarious liability based on an incident where an employee of the restaurant spat in the food that plaintiff trooper ordered while the employee was in the act of performing his job of preparing that food for the trooper, because the Court of Appeals already held that the trial court did not err in granting summary judgment to Taco Bell on the issue of vicarious liability.

Appeal by plaintiff from order entered 26 January 2000 by Judge Charles C. Lamm, Jr. in Superior Court, Buncombe County. Heard in the Court of Appeals 6 February 2001.

*Long, Parker, Warren & Jones, P.A., by Steve Warren, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by Robert R. Marcus, for defendants-appellees.*

WYNN, Judge.

While on duty for the North Carolina Highway Patrol, Trooper Chris T. Phillips stopped to order food from the drive-through win-

dow of a Taco Bell restaurant in Black Mountain, North Carolina. Restaurant Management of Carolina, L.P. owned and operated the restaurant under a franchise agreement with Taco Bell Corp. Apparently recognizing that the trooper had ordered food, an employee of the restaurant, Jason Paul Jones, spat in the trooper's food before serving it to him. Shortly thereafter, while consuming the food, the trooper noticed a substance on the food that appeared to be human saliva. He returned immediately to the restaurant and spoke to the shift manager, who denied any knowledge of the incident. Nonetheless, the trooper reported the incident to the local police department and to his supervisor. A State Bureau of Investigation laboratory report later confirmed the presence of human saliva in the food. Two days later, Jones revealed to his shift supervisor that he spat in the trooper's food because he had been "harassed" by local police officers for skateboarding and thought the trooper-customer could have been one of those officers.

The trooper brought actions against Jones, Restaurant Management and Taco Bell for: (1) Breach of implied warranty of merchantability; (2) Intentional infliction of emotional distress; (3) Gross negligence; and (4) Punitive damages. Following responsive pleadings and discovery, the trial court granted summary judgment in favor of Restaurant Management and Taco Bell. The trooper now appeals to us.

Conspicuously, the summary judgment order in this case disposed of fewer than all claims brought by the trooper—the claims against Jones remain; ordinarily, such an order is interlocutory and not immediately appealable. *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). However, pertinent to this appeal, N.C. Gen. Stat. § 7A-27(d) (1999) permits an appeal from an interlocutory order that affects "a substantial right which may be lost or prejudiced if not reviewed prior to final judgment." *Dalton Moran Shook Inc. v. Pitt Development Co.*, 113 N.C. App. 707, 710, 440 S.E.2d 585, 588 (1994). On appeal, the trooper contends that his claims against Restaurant Management and Taco Bell involve issues of fact common to his claims against Jones and that if this appeal is dismissed as interlocutory, separate trials will be required to determine the same factual issues. We agree with him. *See Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) ("[T]he right to avoid the possibility of two trials *on the same issues* can be . . . a substantial right" that permits an appeal of an interlocutory order when there are issues of fact common to the claim appealed and remaining claims) (internal

citations omitted). Accordingly, we address the merits of the trooper's claims against both Restaurant Management and Taco Bell.

---

I.  Restaurant Management

A.  Vicarious Liability

[1] The trooper first argues that the record shows a genuine issue of fact as to the vicarious liability of Restaurant Management for the acts of its employee, Jones. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999) (Summary judgment is inappropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show a genuine issue as to any material fact). We agree.

The parties in this appeal contend that the following language from our Supreme Court's decision in *Wegner v. Delicatessen*, 270 N.C. 62, 153 S.E.2d 804 (1967), controls the outcome of this issue:

> If the servant was engaged in performing the duties of his employment at the time he did the wrongful act which caused the injury, the employer is not absolved from liability by reason of the fact that the employee was also motivated by malice or ill will toward the person injured, or even by the fact that the employer had expressly forbidden him to commit such act.

*Id.* at 66, 153 S.E.2d at 807-08. In *Wegner*, the food patron sat down and asked the restaurant's bus boy to remove some dirty dishes from the table. The bus boy, whose "job was to collect and remove dishes, carry trays, and the like," removed the dirty dishes as well as a clean glass from the table, prompting the food patron to ask for a clean, fresh glass. *Id.* at 68, 153 S.E.2d at 809. Minutes later, the bus boy returned and slammed a clean glass onto the table. Following a verbal exchange, the bus boy "asked the [food patron] if he wanted his eyes cut out," to which the food patron did not respond. *Id.* at 64, 153 S.E.2d at 806. Later, when the food patron started to leave the restaurant, the bus boy punched and kicked him.

In reviewing the trial court's judgment of nonsuit in favor of the restaurant, our Supreme Court in *Wegner* held that "[w]hatever the source of his animosity toward the [food patron] may have been, he did not strike the [food patron] as a means or method of performing his duties as bus boy." *Id.* at 68, 153 S.E.2d at 809. The Court concluded that the bus boy's assault of the food patron could not "be

deemed an act of his employer[.]" *Id.* Moreover, pertinent to the outcome of this appeal, the Court instructively stated that:

> A different situation would be presented if the glass which he "slammed down" upon the table had shattered and injured the plaintiff, for there the employee would have been performing an act which he was employed to do and his negligent or improper method of doing it would have been the act of his employer in the contemplation of the law.

*Id. Cf. Medlin v. Bass*, 327 N.C. 587, 593, 398 S.E.2d 460, 463 (1990) ("Where the employee's actions conceivably are within the scope of employment and in furtherance of the employer's business, the question is one for the jury"); *Edwards v. Akion*, 52 N.C. App. 688, 698, 279 S.E.2d 894, 900, *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981) ("When there is a dispute as to what the employee was actually doing at the time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury.")

In the instant case, we hold that there is at least a genuine issue of material fact as to whether Jones's acts were within the scope of his employment and in furtherance of Restaurant Management's business. The record shows that when he spat into the trooper's food, he was in the act of performing his job of preparing that food for the trooper. His concealed act of spitting into food while preparing it related directly to the manner in which he carried out his job duty of preparing the food for consumption by the customer. Indeed a jury *could* determine that his act of spitting in the trooper's food was done within the scope of his employment. We see no distinction between the instant case and the situation envisioned by our Supreme Court in *Wegner*, where a bus boy slams down a glass, such that the glass shatters and injures a customer. In such a situation, as here, "the employee would have been performing an act which he was employed to do and his negligent or improper method of doing it would have been the act of his employer in the contemplation of the law." *Wegner*, 270 N.C. at 68, 153 S.E.2d at 809. Accordingly, we conclude that the trial court erred in granting summary judgment as to the issue of Restaurant Management's vicarious liability for Jones's conduct.

B. Ratification

[2] The trooper next argues that Restaurant Management ratified Jones's acts and therefore the trial court erred in granting summary judgment in its favor. We disagree.

In *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 492, 340 S.E.2d 116, 122, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986), this Court held that:

> In order to show that the wrongful act of an employee has been ratified by his employer, it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act.

In addition, "[t]he jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 437, 378 S.E.2d 232, 236, (1989), *disc. review improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990) (citation omitted). "Such course of conduct may involve an omission to act." *Id.* Moreover, although the employer must have knowledge of all material facts relative to its employee's acts in order to effect ratification,

> [i]f the purported principal is shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such investigation, his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has.

Restatement (Second) of Agency § 91, Comment e, p. 235 (1958). *Accord Equipment Co. v. Anders*, 265 N.C. 393, 401, 144 S.E.2d 252, 258 (1965) (citation omitted) ("[W]hen [a principal] has such information that a person of ordinary intelligence would infer the existence of the facts in question, the triers of fact ordinarily would find that he had knowledge of such fact").

In this case, the trooper argues that the evidence presents an issue of fact as to whether Restaurant Management ratified the acts of Jones because (1) a co-employee knowingly delivered the contaminated food to the trooper, (2) the shift manager had knowledge of the incident after Jones's confession and failed to make efforts to contact the trooper, and (3) Restaurant Management failed to make an appropriate investigation. However, the record shows that Jones did not communicate his act to any of his co-employees at the moment he contaminated the trooper's food. Even viewed in the light most favorable to the trooper, there was no evidence showing that any of Jones's co-employees witnessed him spitting in the food. In addition, there is

PHILLIPS v. RESTAURANT MGMT. OF CAROLINA, L.P.

[146 N.C. App. 203 (2001)]

no evidence in the record that tends to show Restaurant Management had any reason to suspect that Jones would contaminate a customer's food or that a member of management had direct knowledge that Jones had contaminated the food. Immediately after the incident occurred, Jones denied any involvement in contaminating the trooper's food. Significantly, the record shows no forecast of any credible evidence that a co-employee knew of Jones's act against the trooper and knowingly failed to intercede by taking the contaminated food out of the chain of delivery to the trooper.

Furthermore, we hold that evidence showing that Restaurant Management failed to contact the trooper after Jones admitted his involvement does not establish ratification by Restaurant Management. According to an affidavit of a police officer investigating the incident, Jones and Restaurant Management cooperated with the police investigation. A supervisor confronted Jones on his next scheduled shift following the incident; thereafter, Jones immediately resigned and Restaurant Management accepted his resignation. The record also shows that Restaurant Management investigated whether there was any other employee involvement and found that Jones had acted alone. Since the record fails to forecast evidence that Restaurant Management ratified the actions of Jones, the trial court properly granted summary judgment on this issue.

C. Breach of Implied Warranty of Merchantability

[3] The trooper next argues that the trial court erred in granting summary judgment to Restaurant Management as to his claim for breach of the implied warranty of merchantability. We agree.

The nature of a claim for breach of an implied warranty of merchantability is contractual. *See Tedder v. Bottling Co.*, 270 N.C. 301, 304, 154 S.E.2d 337, 339 (1967) (holding bottling company liable for breach of implied warranty of merchantability for presence of deleterious substance in product that resulted in consumer's illness). In general, a retailer impliedly warrants that the goods sold to a consumer are fit, and when that warranty is breached the injured consumer may recover. *Id.* at 305, 154 S.E.2d at 339. Additionally, "[a]uthorities generally hold that the manufacturer, processor and packager of foods . . . intended for human consumption are held to a high degree of responsibility to the ultimate consumer to see to it that the food and drink are not injurious to health." *Terry v. Bottling Co.*, 263 N.C. 1, 2, 138 S.E.2d 753, 754 (1964).

To recover for breach of the implied warranty of merchantability, a plaintiff must establish each of the following elements:

> (1) a merchant sold goods, (2) the goods were not 'merchantable' at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

*Ismael v. Goodman Toyota*, 106 N.C. App. 421, 430, 417 S.E.2d 290, 295 (1992) (citations omitted). If evidence is lacking as to any one of these elements, summary judgment is appropriate. *See Cockerman v. Ward and Astrup Co. v. West Co.*, 44 N.C. App. 615, 262 S.E. 2d 651, *disc. review denied*, 300 N.C. 195, 269 S.E.2d 622 (1980).

In the instant case, Restaurant Management does not contest elements (1), (2) and (5); rather, it contends that the evidence fails to support the injury and causation requirements of a claim for breach of implied warranty of merchantability. However, the trooper's verified complaint alleges that he suffered injury from the food preparer's saliva as a proximate result of his ingestion of the saliva-covered nacho chips. His amended complaint alleges that he suffered the following specifically-enumerated injuries: "severe emotional distress, anxiety and fear of contraction of communicable diseases, such as AIDS, HIV, Hepatitis C or other infectious diseases." Thus, we must address the first-impression issue for North Carolina law of whether a food patron's ingestion of a food preparer's saliva constitutes an injury unto itself, sufficient to satisfy the injury required to sustain a claim of breach of implied warranty of merchantability.

Our deliberative process in deciding this novel issue is guided by court decisions in other jurisdictions which hold that spitting upon a person may constitute a criminal assault or battery. *See People v. Terry*, 553 N.W.2d 23, 25 (Mich. Ct. App. 1996) ("spitting upon a person is a battery, which is a consummated assault"); *Ray v. United States*, 575 A.2d 1196 (D.C. 1990) (spitting in an officer's face constitutes assault); *see also People v. Boyd*, 300 N.W.2d 760 (Mich. Ct. App. 1980) (throwing urine on guard constitutes violence). *But see State v. Bailey*, 615 N.E.2d 322 (Ohio Ct. App. 1992) (spitting on victim's arm does not constitute assault). We discern from this guidance that if the simple act of spitting on a person may be considered assault or battery despite no physical manifestation of harm, then it appears mani-

fest that there exists a basis for finding that introducing one's saliva into another person's internal system would be highly offensive and, as such, constitute a harm or injury. We are aware of no binding authority requiring a physical injury, or even a physical manifestation of a mental injury, to support a claim for breach of an implied warranty of merchantability, and we decline to impose such a requirement. We conclude that the trooper's claim for breach of implied warranty of merchantability does not fail as a matter of law for failure to state an injury as against Restaurant Management; accordingly, we hold that the trial court erred in granting summary judgment to Restaurant Management on this issue.

D. Intentional Infliction of Emotional Distress

[4] The trooper next argues that the trial court erred in granting summary judgment to Restaurant Management on his claim for intentional infliction of emotional distress. We agree.

"The elements of intentional infliction of emotional distress are: '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress.'" *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 412, 473 S.E.2d 38, 40-41 (1996) (quoting *Hogan*, 79 N.C. App. at 487-88, 340 S.E.2d at 119). As to the first element, a determination at summary judgment of whether "alleged acts may be reasonably regarded as extreme and outrageous is initially a question of law." *Shreve v. Duke Power Co.*, 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citations omitted). "Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society." *Id.* (citations omitted).

Indeed, the State of Pennsylvania has made it a felony for a prisoner to "intentionally cause or knowingly cause another to come in contact with blood, semen, *saliva*, urine or feces." 19 Pa. C.S.A. § 2703.1 (emphasis added). Criminal activity is normally considered more than merely reprehensible. Additionally, the Oregon Court of Appeals has found that contamination of a prisoner's food with saliva or other body fluids could be a violation of the 8th Amendment to the United States Constitution. *See Fort v. Palmateer*, 10 P.3d 291 (Or. Ct. App. 2000). Having considered the reprehensible nature of defendant Jones's act in this context, and viewing the facts before us, we cannot say, as a matter of law, that a food preparer surreptitiously spitting in food intended for a patron's consumption does not rise to the level of "extreme and outrageous."

Furthermore, in his sworn complaint, the trooper stated that he suffered severe emotional distress as a result of the consumption of the saliva-covered nachos. The trooper received counseling twice from the medical staff employed by the North Carolina State Highway Patrol, even though he was not prescribed any medication. Additionally, in support of his allegation that he suffered severe emotional distress from this incident, the trooper offered an affidavit from Dr. Tom Griggs, the highway patrol physician, stating that, based on his observation, the trooper "experienced emotional distress associated with the spitting incident, [sic] and his fear of contamination or contraction of communicable diseases as a result of the incident."[1]

" '[S]evere emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *McAllister v. Ha*, 347 N.C. 638, 645, 496 S.E.2d 577, 583 (1998) (quoting *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990)). Summary judgment may be proper on an intentional infliction of emotional distress claim "[w]here the plaintiff fail[s] to forecast evidence of medical documentation to substantiate alleged ' "severe emotional distress" ' or ' "severe and disabling" psychological problems[.]' " *Dobson v. Harris*, 134 N.C. App. 573, 579, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000) (quoting *Waddle v. Sparks*, 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992)). "To have a jury trial . . . plaintiff only had to

---

1. Courts in other jurisdictions have held that fear of contamination or contraction of communicable diseases may support recovery by a plaintiff, even though the plaintiff does not show *actual* exposure to any communicable disease. *See Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1204 (2nd Cir. 1994), *cert. denied*, 513 U.S. 1079, 130 L. Ed. 2d 631 (1995) (holding that where plaintiff's "emotional distress was the direct result of documented physical injury and was reasonably foreseeable in light of the fact that [the plaintiff] may have been exposed to HIV, he was not required to prove actual exposure to the disease in order to state a viable cause of action"); *see also Madrid v. Lincoln County Med. Ctr.*, 923 P.2d 1154, 1159-60 (N.M. 1996) (allowing plaintiff to recover for emotional distress during "window of anxiety" period, which exists between initial exposure to possible HIV contaminated source and the indication that HIV test results are negative, even without evidence of actual exposure to HIV); *South Regional Medical Center v. Pickering*, 749 So.2d 95 (Miss. 1999) (permitting plaintiff to recover for emotional distress during "window of anxiety" period despite absence of evidence of actual exposure to HIV when the defendant allowed or caused the evidence that would allow the determination of the HIV exposure to be destroyed). *But see Burk v. Sage Prods., Inc.*, 747 F.Supp. 285 (E.D.Pa.1990) (holding that absent any proof that the plaintiff was in fact exposed to HIV, he could not recover damages for his fear of contracting AIDS).

present competent evidence that he suffered emotional distress and that it resulted from defendant's conduct." *McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. 451, 454, 358 S.E.2d 107, 109 (1987) (holding that the plaintiff's contention that she was "shocked" and "upset" after her unexpected termination was sufficient to survive motion to dismiss claim for intentional infliction of emotional distress; nonetheless, claim was dismissed for failure to show that conduct was outrageous).

In the instant case, the trooper alleged that he suffered severe emotional distress as a result of consuming the saliva-covered nachos, and offered competent evidence in the form of an affidavit from a physician in support thereof. In his complaint, the trooper asserted that the alleged actions were "intended to cause severe emotional distress to Plaintiff or occurred with reckless indifference to the likelihood that said conduct would cause such distress."

We hold that whether the trooper's suffering rose to the level of severe emotional distress required for intentional infliction of emotional distress is a question for the jury. *See id.* Accordingly, we conclude that the trial court erred in granting summary judgment to Restaurant Management on this issue.

E. Gross Negligence

**[5]** The trooper further asserts that the evidence raised a genuine issue of material fact for a jury to determine whether Restaurant Management acted in a grossly negligent manner. In *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E.2d 255 (1979), our Supreme Court "emphasized that summary judgment is a drastic measure, and it should be used with caution. This is especially true in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case." *Id.* at 402, 250 S.E.2d at 257 (citations omitted). For the reasons set forth above in our reversal of the trial court's grant of summary judgment as to Restaurant Management's vicarious liability, we conclude further that the trial court erred in granting summary judgment to defendant Restaurant Management on the issue of gross negligence.

F. Punitive Damages

**[6]** Lastly, the trooper asserts that his complaint states a claim against Restaurant Management for punitive damages under N.C. Gen. Stat. § 1D-15 (1999). G.S. § 1D-15 provides that, to be awarded punitive damages, a claimant must prove, by clear and convincing evi-

dence, the existence of an aggravating factor (including fraud, malice, or willful or wanton conduct) related to the injury for which compensatory damages are to be awarded. *See* G.S. § 1D-15(a), (b). Relevant to the trooper's claim against Restaurant Management, G.S. § 1D-15(c) provides:

> Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

G.S. § 1D-15(c). As the trooper failed to forecast any credible evidence that any officer, director, or manager of defendant Restaurant Management participated in or condoned any fraudulent, malicious, or willful or wanton act that might provide the basis for punitive damages, his claim for punitive damages against Restaurant Management fails as a matter of law. We therefore affirm the trial court's grant of summary judgment in favor of Restaurant Management on the trooper's claim for punitive damages.

## II. Taco Bell

### A. Vicarious Liability

**[7]** As to Taco Bell, the trooper argues that issues of fact exist as to his claim of Taco Bell's vicarious liability for Jones's actions under theories of agency or apparent agency. An agency relationship "arises when parties manifest consent that one shall act on behalf of the other and subject to his control." *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 524, 528 S.E.2d 923, 926, *disc. review denied*, 352 N.C. 590, 544 S.E.2d 782 (2000) (citing *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 357 S.E.2d 394, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 87 (1987)).

> Under the doctrine of *respondeat superior*, a principal is liable for the torts of its agent which are committed within the scope of the agent's authority, when the principal retains the right to control and direct the manner in which the agent works. Of course, *respondeat superior* does not apply unless an agency relationship of this nature exists.

*Daniels v. Reel*, 133 N.C. App. 1, 10, 515 S.E.2d 22, 28, *disc. review denied*, 350 N.C. 827, 537 S.E.2d 817, 818 (1999) (internal citations omitted). Moreover, in establishing the existence of an actual agency relationship, the evidence must show that a principal actually consents to an agent acting on its behalf. *Knight Publishing Co. v. Chase Manhattan Bank*, 125 N.C. App. 1, 14, 479 S.E.2d 478, 486, *disc. review denied*, 346 N.C. 280, 487 S.E.2d 548 (1997). In contrast, "[a]n apparent agency is created where 'a person by words or conduct represents or permits it to be represented that another person is his agent' when no actual agency exists." *Id.* at 15, 479 S.E.2d at 487 (quoting *Hayman*, 86 N.C. App. at 278, 357 S.E.2d at 397). Apparent agency, however, "may not be relied upon to assert that a principal authorized a certain transaction between its purported agent and a third party unless the third party *actually relied* upon the assertions of the principal regarding the purported agent's power at the time of the transaction." *Id.*

Under the facts of this case, no evidence establishes the existence of an actual agency relationship between Taco Bell and Jones. Further, there is no evidence showing that the trooper relied or acted upon any representation or assertion of Taco Bell. Indeed, there is no evidence that the trooper would have chosen to eat elsewhere or done anything differently had he known that the restaurant at issue herein was not owned and operated by Taco Bell. Finding no actual or apparent agency relationship between defendant Taco Bell and Jones, we conclude that the trial court did not err in granting summary judgment to Taco Bell on the issue of vicarious liability.

B. Ratification

[8] As with defendant Restaurant Management, the trooper presented no evidence of ratification by Taco Bell of defendant Jones's actions. The fact that Taco Bell made no attempt to contact the trooper after Jones admitted spitting in the trooper's food does not establish ratification by Taco Bell. Since the record fails to forecast any evidence that Taco Bell ratified the actions of Jones, the trial court properly granted summary judgment to Taco Bell on this issue. In addition, having determined that the trial court did not err in granting summary judgment to Restaurant Management on the issue of ratification (section I.B., above), we need not address the trooper's assertion of apparent agency between Restaurant Management and Taco Bell.

C. Breach of Implied Warranty of Merchantability

[9] The trooper correctly states in his brief that "the nature of a claim for breach of the implied warranty of merchantability is grounded in contract, not tort[.]" *See Tedder*. As such, traditionally the contract of implied warranty "extends no further than the parties to [the contract] and [] privity to the contract is the basis of liability." *Id.* at 304, 154 S.E.2d at 339; *see Terry*, 263 S.E.2d at 2-3, 138 S.E.2d at 754 (the implied warranty of fitness "extends no further than the parties to the contract of sale"). Nonetheless, over the years our courts have "relaxed the privity rule in certain cases involving food and drink because of their importance to health." *Id.*

The trooper in this case relies upon our Supreme Court's decision in *Tedder*, and similar cases, to support his claim that there is no privity requirement as to his claim for breach of the implied warranty of merchantability against Taco Bell. In *Tedder*, our Supreme Court upheld the application of a claim for implied warranty of merchantability against a soda bottler who sold a soda to the retailer that sold the soda to the plaintiff. However, unlike Taco Bell in this case, the Supreme Court pointed out in *Tedder* that "[o]nly the bottler and the plaintiff actually handled the drink," *id.* at 305, 154 S.E.2d at 340, and that the defective soda was contaminated when it was provided by the bottler to the retailer (i.e. when it left the control of the bottler).

Nonetheless, the trooper contends that he may maintain an action against Taco Bell, regardless of privity, under the North Carolina Products Liability Act, N.C. Gen. Stat. § 99B-1 *et seq.* (1999). *See Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498 (1987) (holding that "an action for breach of implied warranty of merchantability under the Uniform Commercial Code is a 'product liability action' within the meaning of the Products Liability Act if, as here, the action is for injury to person or property resulting from a sale of a product"). However, G.S. § 99B-3 generally abolishes such liability of a manufacturer or seller of a product "where a proximate cause of the personal injury . . . was either an alteration or modification of the product . . . occurr[ing] after the product left the control of such manufacturer or seller[.]" G.S. § 99B-3(a). Such alteration or modification of the product may include "changes in the design, formula, function, or use of the product from that originally designed, tested, or intended by the manufacturer." G.S. § 99B-3(b). Thus, even assuming, *arguendo*, that Taco Bell manufactured the food that was

purchased and consumed by the trooper, his claim against Taco Bell fails because the food purchased was altered in a manner not originally intended by Taco Bell, at a time *after* it left Taco Bell's control and without Taco Bell's express consent. *See Rich v. Shaw*, 98 N.C. App. 489, 391 S.E.2d 220, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 689 (1990). Accordingly, the trial court properly granted summary judgment to Taco Bell on this issue.

D. Trooper's Remaining Claims

[10] The trooper's remaining claims of intentional infliction of emotional distress, gross negligence, and punitive damages against Taco Bell are based upon a theory of Taco Bell's vicarious liability for Jones's actions (or the actions of alleged "Doe Employees," whom the trooper alleges knew or should have known that the nacho chips were contaminated by Jones's spit). Based on our finding in section II.A., above, that the trial court did not err in granting summary judgment to Taco Bell on the issue of vicarious liability, we conclude that summary judgment in favor of Taco Bell was proper on the issues of intentional infliction of emotional distress, gross negligence, and punitive damages. *See* G.S. § 1D-15(a) (punitive damages may not be awarded against a defendant absent liability for compensatory damages).

---

In summation, the trial court's grant of summary judgment in favor of Restaurant Management is vacated and remanded as to the trooper's claims for intentional infliction of emotional distress and gross negligence (on the basis of vicarious liability), and breach of the implied warranty of merchantability. However, the trial court's grant of summary judgment in favor of Restaurant Management is affirmed as to the trooper's claim for punitive damages, as well as his claims for intentional infliction of emotional distress and gross negligence insofar as those claims are based upon a theory of ratification by defendant Restaurant Management of the acts of defendant Jones. Finally, the trial court's grant of summary judgment in favor of Taco Bell is affirmed as to all of the trooper's claims.

Affirmed in part, reversed in part as to Restaurant Management.

Affirmed as to Taco Bell.

Judges McGEE and BIGGS concur.