CENCOMP, INC. v. WEBCON, INC.

[157 N.C. App. 501 (2003)]

CENCOMP, INC., D/B/A PHILLIPS IRON WORKS, AND TED CIHOS D/B/A PHILLIPS IRON
WORKS, PLAINTIFFS v. WEBCON, INC., AND INTERNATIONAL FIDELITY INSUR-
ANCE COMPANY, DEFENDANTS

No. COA02-924

(Filed 6 May 2003)

**1. Appeal and Error— appealability—summary judgment—
interlocutory order—substantial right**

Although an appeal from the trial court's grant of summary
judgment in favor of defendant is an appeal from an interlocutory
order since it did not dispose of all the claims in the case, the
order is immediately appealable because the right to avoid the
possibility of two trials on the same issues when there are issues
of fact common to the claims appealed and remaining claims
affects a substantial right.

**2. Construction Claims— breach of contract—quantum
meruit—payment bond—timeliness of claim—final settlement**

The trial court did not err in a breach of contract and quan-
tum meruit case arising out of a construction payment bond claim
under N.C.G.S. § 44A-26 by granting summary judgment in favor
of defendant payment bond surety on the basis that plaintiff
failed to file its complaint within the allotted time restrictions
provided under N.C.G.S. §44A-28(b) even though plaintiff asserts
the settlement reached between the parties on 21 September 1999
was not a final settlement since the pertinent city retained
approximately $50,000, because: (1) although a project must be
substantially completed before a government agency may deter-
mine the final settlement, our legislature does not require the
contract to be 100% complete before the government may deter-
mine the final settlement; and (2) a governmental entity may
administratively fix the amount it is bound to pay and then
retain a portion of that payment to ensure not only that the
contractor completes the entire project, but also that no liens
are outstanding.

**3. Venue— transfer—propriety of summary judgment**

Although plaintiff appealed the venue transfer predicated on
a determination by the appellate court that summary judgment
was improper, this assignment of error is overruled because the
appellate court determined that the trial court properly granted
summary judgment in favor of defendant payment bond surety.

CENCOMP, INC. v. WEBCON, INC.

[157 N.C. App. 501 (2003)]

Appeal by plaintiffs from orders entered 10 April 2002 by Judge Howard E. Manning, Jr., in Person County Superior Court. Heard in the Court of Appeals 19 February 2003.

*William M. Black, Jr., for plaintiff-appellant.*

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for defendants-appellees.*

CALABRIA, Judge.

Plaintiffs, Cencomp, Inc., d/b/a Phillips Iron Works and Ted Cihos d/b/a Phillips Iron Works (collectively "Phillips"), were subcontractors of defendant Webcon, Inc. ("Webcon") on a construction project related to a sewer line for the City of Roxboro ("the City"). Defendant International Fidelity Insurance Company ("Fidelity") was the payment bond surety on the project.

On 11 December 2000, Phillips filed suit against Webcon asserting breach of contract and quantum meruit claims, and against Webcon and Fidelity asserting a payment bond claim pursuant to N.C. Gen. Stat. § 44A-26 (2001). The court granted Fidelity's motion for summary judgment, finding the suit was time-barred because: (1) N.C. Gen. Stat. § 44A-28(b) required Phillips file its claim on the bond within one year after the City and Webcon reached a "final settlement;" (2) a final settlement occurred on 21 September 1999; and (3) Phillips' suit was not filed until 11 December 2000, more than one year later. The court then granted Webcon's motion for a change of venue because without Fidelity there was no basis for venue in Person County. Phillips appeals.

**[1]** "The order of the superior court granting the defendant's motion for summary judgment did not dispose of all the claims in the case, making it interlocutory." *DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 584, 500 S.E.2d 666, 667 (1998). Although an interlocutory order is ordinarily not immediately appealable, an interlocutory order may be immediately appealed if it affects a substantial right. N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) (2001). Phillips asserts a substantial right "to have the case heard in Person County and to have the liability of all Defendants determined in one proceeding" will be lost without appellate review. " 'The right to avoid the possibility of two trials on the same issues can be . . . a substantial right' that permits an appeal of an interlocutory order when there are issues of fact common to the claim appealed and remaining claims." *Phillips v.*

*Restaurant Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 207, 552 S.E.2d 686, 689, *disc. review denied*, 355 N.C. 214, 560 S.E.2d 132 (2001) (quoting *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982)). Here, the summary judgment disposed of only the claim on the payment bond against Fidelity, and remaining claims against Webcon include claims on the payment bond, breach of contract, and quantum meruit. Since the claims against Webcon remain and there are common issues of fact, we find Phillips properly asserted a substantial right and appealed the interlocutory summary judgment order against Fidelity.

**[2]** Phillips asserts the trial court erred by: (I) determining no genuine issue of material fact existed as to whether a "final settlement" was reached between Webcon and the City in September 1999; and (II) ordering venue be transferred.

## I. Summary Judgment

"Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. . . . [T]he evidence is viewed in the light most favorable to the non-movant." *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830, 562 S.E.2d 75, 79, *disc. review denied*, 355 N.C. 747, 565 S.E.2d 192 (2002). Since the trial court granted Fidelity summary judgment on the basis that Phillips failed to file its complaint within the allotted time restrictions provided for by N.C. Gen. Stat. § 44A-28(b), the issue for this Court is whether, in the light most favorable to Phillips, a genuine issue of material fact exists regarding the timeliness of the complaint.

North Carolina law provides:

No action on a payment bond shall be commenced after the expiration of the longer period of one year from the day on which the last of the labor was performed or material was furnished by the claimant, or one year from the day on which final settlement was made with the contractor.

N.C. Gen. Stat. § 44A-28(b) (2001). This statute is a statute of repose and a condition precedent, therefore, plaintiff has the burden of proving its cause of action was brought within the one-year time period. *Tipton & Young Construction Co. v. Blue Ridge Structure Co.*, 116 N.C. App. 115, 118, 446 S.E.2d 603, 605 (1994). If plaintiff fails to meet its burden, " 'plaintiff's case is insufficient as a matter of law[,]' " and

summary judgment for defendant is proper. *Id.*, (quoting *Chicopee, Inc. v. Sims Metal Works*, 98 N.C. App. 423, 426, 391 S.E.2d 211, 213 (1990)).

Phillips asserts it met its burden and complied with the statute because the settlement reached between Webcon and the City in September 1999 was not a "final settlement" since the City retained approximately $50,000.00. Defendants disagree asserting that on 21 September 1999 the City determined the "final settlement" and therefore Phillips' claim against Fidelity is barred by the one-year statute of repose.

The meaning of the term "final settlement," originally a federal term from the 1905 Heard Act and later the 1935 Miller Act, "was litigated extensively and caused considerable uncertainty in the construction industry. In 1959, Congress abandoned the term[.]" *Safeco Ins. Co. of America v. Honeywell, Inc.*, 639 P.2d 996, 1000 (Alaska 1981). Unlike Congress, our state legislature has not abandoned the term.

When interpreting the meaning of "final settlement," our courts turn to federal law for guidance. *Pyco Supply Co., Inc. v. American Centennial Ins. Co.*, 85 N.C. App. 114, 354 S.E.2d 360 (1987), *rev'd on other grounds*, 321 N.C. 435, 364 S.E.2d 380 (1988). In *Pyco*, this Court quoted the seminal United States Supreme Court decision, *Illinois Surety Co. v. U.S. to the use of Peeler, et al.*, 240 U.S. 214, 60 L. Ed. 609 (1915), in which,

> the [United States Supreme] Court held that final settlement occurred *when*, so far as the government was concerned, *the amount which it was bound to pay was administratively fixed* by the proper authority. . . . [And the Court explained t]he date of the final settlement does not depend upon the contractor's agreement and must be clear, readily ascertainable and occur at a definite time.

*Pyco*, 85 N.C. App. at 120-21, 354 S.E.2d at 364 (emphasis added). In *Illinois Surety*, the Court expressly stated that final settlement is not synonymous with final payment. *Illinois Surety*, 240 U.S. at 218-19, 60 L. Ed. at 613. *See also Zimmerman's Electric, Inc. v. Fidelity and Deposit Co. of Maryland*, 231 N.W.2d 342, 344 (Neb. 1975); *United States v. Arthur Storm Co.*, 101 F.2d 524, 526 (6th Cir., 1939).

Therefore, the question for this Court is whether there is any genuine issue of material fact as to whether the City administratively

**CENCOMP, INC. v. WEBCON, INC.**

[157 N.C. App. 501 (2003)]

fixed the amount it was bound to pay on 21 September 1999. Phillips asserts that since the contract was not complete and the City retained a portion of the final payment, no final settlement could have been reached. We disagree.

First, we address the completion requirement. The federal act expressly required completion of the contract as a prerequisite to "final settlement." *Zimmerman*, 231 N.W.2d at 344-45 (citing and discussing numerous federal cases regarding the completion requirement). Although not expressly included in state statutes, the completion requirement has been interpreted as "an inherent requirement." *Id.*, 231 N.W.2d at 344. The Supreme Court of Nebraska reasoned that without this final completion "there could be a final ascertainment of the amount due immediately on the execution of a contract providing for the payment of a specified sum or on issuance of each monthly statement as the work progressed[.]" *Id.* While such an interpretation is possible, we do not find a final completion requirement need be implied into our statute since the doctrine of substantial completion adequately addresses the aforementioned concerns. Certainly a project must be substantially complete before a governmental agency is capable of administratively fixing the amount it is bound to pay, however, our legislature did not expressly require the contract to be one-hundred-percent completed before the government may determine the final settlement, and we choose not to import this language into our law.

Second, we address the effect of a governmental entity retaining some of the final settlement. It is true that "[the government's] retainage of funds casts doubt on whether its [] payment was intended to be a genuinely 'final' payment." *Pyco*, 85 N.C. App. at 121, 354 S.E.2d at 365. However, as explained earlier, final payment and final settlement are not synonymous. While retainage directly affects final payment, it does not have a similar impact on final settlement. A governmental entity may administratively fix the amount it is bound to pay, and then retain a portion of that payment to ensure not only that the contractor completes the entire project, including the punchlist, but also that no liens are outstanding.

Since we have now established a final settlement *could* have been reached under North Carolina law, the question for this Court is whether there is a genuine issue of material fact regarding whether "the amount which [the governmental entity] was bound to pay was administratively fixed by the proper authority" and therefore a final settlement, *in fact*, occurred.

The evidence tended to show that on 15 September 1999 Webcon sent a final billing to the City. The total bill was $503,458.93, and since the City had paid $321,044.85, the total due was $182,414.08. Shortly thereafter, Kimley-Horn, the engineers for the project, also wrote to the City explaining: "the work performed by WEBCON is substantially complete. Final payment (less retainage) should be made. . . . Th[e] retainage balance should be paid to WEBCON after the City is satisfied that the project is 100% complete." On 20 September 1999, the President of Webcon wrote to Kimley-Horn explaining some miscalculations and noting "[p]er my meeting with the Town of Roxboro, the project has been accepted and all monies are due." On 21 September 1999, the City wrote to Webcon, enclosing a check for $132,122.34, which represented the $182,414.08 due less $50,291.74 in retainage. The City explained:

> [t]he City of Roxboro has received several complaints from subcontractors and suppliers regarding the failure of Webcon Incorporated to pay invoices for materials and services related to this project in a timely manner. Therefore, the retainage amount shown above of $50,291.74 will not be remitted to Webcon Incorporated until all suppliers and subcontractors have been paid in full. In addition, the City will require Webcon Incorporated to sign a waiver of lien stating that all vendors have been paid in full and that there are no outstanding liens or claims against the City of Roxboro relating to the Reamstown Sewer Line Extension Project.

In a deposition, the Finance Director for the City, James C. Overton, Jr., ("Overton") testified: "[a]s far as I'm concerned, that's the final amount [$503,458.93] that we owe them." He further explained the concept of retainage:

> [u]sually on construction contracts, we retain either five or ten percent from the total contract. Each invoice that comes in, we retain five to ten percent. That retainage is held back to make sure that the contract is completed to the satisfaction of the city, that it passes final inspection, and that all bills have been paid and that there's no liens against it. And once all of that final inspection's been done, we release and pay the retainage.

Overton clarified that unless Webcon failed to meet these requirements, the retainage would be released. Thomas S. Warren, Jr., the City's engineering technician for the Reamstown project, testified that although the contractor generally submits a final bill for every-

thing they are owed including the retainage, "[the City] usually do[es] not pay the retainers in the final billing. The retainage is usually [paid] one to two to three months after that."

Taking this evidence in the light most favorable to Phillips, although the project was not one-hundred-percent complete and the City retained a portion of the amount due, it is nevertheless apparent that on 21 September 1999, the City administratively fixed the amount it was due to pay, thereby reaching a final settlement. Since Phillips filed suit on 11 December 2000, more than one year after final settlement, in violation of N.C. Gen. Stat. § 44A-28(b), the trial court properly granted Fidelity summary judgment.

## II. Venue

[3] Phillips' appeal of the venue transfer was predicated upon this Court's determination that summary judgment was improper. Since we determined the trial court properly granted summary judgment for Fidelity, this assignment of error is overruled.

The orders of the trial court are affirmed.

Affirmed.

Judges McCULLOUGH and TYSON concur.